No. 88.—SCOTT, CARHART, & Co., plaintiffs in error, *vs.* LOTT WARREN, and JOHN H. SPICER, defendants in error.

In the case of a sale and conveyance of land, and a mortgage, taken at the same time, in return, to secure the payment of the purchase money; the deed and the mortgage are considered as parts of the same contract, constituting one act; and justice and policy equally require that no prior judgment against the mortgagor should intervene and attach upon the land, during the transitory seizin, to the prejudice of the mortgagee.

A. sold and conveyed land to B. taking a mortgage to secure the payment of the purchase money. C. had a judgment against B.

*Held*, that the land was liable to the mortgage before it was to the judgment. *Benning, J. concurring.*

In Equity, in Dougherty Superior Court. Before ALLEN, Judge, June Term, 1856.

Upon the 29th day of December 1853, Merrick Barnes sold to James W. Wade, ten acres of land, (part of lot No. 328 in the 1st District of Dougherty county) adjoining the City of Albany, and executed to him a deed for the same, taking a mortgage upon the premises to secure the purchase money: Wade entered and held possession about eighteen months, when he left the county, and not having paid for the land, sent Barnes word to do the best he could with it. Barnes sold the place to Lott Warren and John H. Spicer on the 12th day of August 1854, and transferred to them the mortgage taken from Wade.

Scott, Carhart & Co., who had obtained a judgment against Wade at the——Term, 1852, of Baker Superior Court, levied their *fi. fa.* upon the land as his property and sought to subject it to the payment of their debt.

The complainants, Warren and Spicer filed their bill, alleging these facts and enjoining the sale of the land, and set up the *vendor's lien* for the purchase money. The bill also seeks to correct mistakes in the drawing of the original notes and mortgage of Wade.

To this bill defendants filed a demurrer, which the Court

overruled, and thereupon defendants except and assign error, &c.

HINES, for plaintiffs in error.

LOTT WARREN, for defendants in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Amongst other questions, it has been discussed, whether the taking of the mortgage in this case by Barnes from Wade was a waiver of the vendor's lien.   The cases are not entirely harmonious on this point.   Lord Eldon said, it did not appear to him a violent conclusion, as between vendor and vendee, notwithstanding the mortgage, that the lien should subsist.    15 *Ves. Jr.* 341, *and see Cowell vs. Simpson,* 16 *Ves. Jr.* 278—280.   He added: "it must not be undertood, that a mortgage taken is to be considered as conclusive ground for the inference that a lien was not intended; and the question must be, whether, under the circumstances of the particular case, the inference arises?"   *Mackreth vs. Symmons,* 15 *Ves. Jr.* 348 349.   The American cases, seem to establish a contrary doctrine; and to hold that the lien will be waived, whenever any distinct security is taken, as by mortgage on the land itself, for the whole or a part of the purchase money. 1 *White and Tudor's Leading Cases, and the authorities there cited in note; Taylor vs. Adams, Gilmer,* 329*; Little vs. Brown,* 2 *Leigh,* 353.

Taking the averments in the bill to be true in the case before us, that "simultaneous with the execution of the notes and deed, to fulfil, secure and carry out, to said Barnes, a lien on the ten acres of land for the purchase money, the said James W. Wade executed a mortgage deed" &c., I say and infer from this allegation, that Barnes considered that the mortgage gave him greater security for his money than the implied vendor's lien, as in ordinary cases it does, and that he looked to that pledge for payment.

Scott, Carhart & Co. vs. Warren & Spicer.

The question then is, does it protect him and his assignees from the pre-existing judgment in favor of Scott, Carhart & Co. against Wade? We think so, most indubitably. It is conceded that the vendor's lien is protected against an older judgment. If this be true of an implied lien, much more should it be of that which is express.

Chancellor Kent says, "In one instance a mortgage will have preference over a prior docketed judgment, and that is the case of a sale and conveyance of land and a mortgage taken at the same time, to secure the payment of the purchase money. The deed and the mortgage are considered parts of the same contract and constituting one act; and justice and policy equally require, that no prior judgment against the mortgagee should intervene and attach upon the land during the transitory seizin, to the prejudice of the mortgagee," He adds, "This sound doctrine is for greater certainty made a statute provision in New York." 4 *Kent* 173, 174, *5th. edition.*

The act to which the Chancellor refers is one relating to mortgages, passed 9th April 1805, and is considered as *declaratory* of the common law. *Per Spencer, J.* 15 *John's Rep.* 464. Doubts had arisen concerning it, and the statute was intended to remove those doubts. A fact that has occurred a thousand times and oftener in our own State, as I have taken occasion to remark before. Some well established principle being questioned, to confirm and support it, the Legislature intervenes; and yet those very statutes are relied on and quoted, to prove that such was not the law before! We have some striking examples of this sort at the session of 1855—1856, as I may have occasion to show on some future occasion.

I should be gratified to see a similar act passed in this State, and the vendors implied lien abolished altogether.

I have said, that the doctrine in Kent was the doctrine of the common law. The wife's claim to dower, is an analogous case; and Coke says of this, that a wife shall not be

endowed of a seizin for an instant. *Coke Litt.* 31 *b.* The same principle is recognised in Lord Cromwell's case, 2 *Coke* 77. The same point was adjudged in *Dixon vs. Harrison,* *Vaughn* 41, and Blackstone draws the distinction clearly. He says, "the seizin of the husband for a *transitory instant* only, when the same act which gives him the estate conveys it also out of him again, (as where by fine land is granted to a man and he immediately renders it back by the same fine,) such a seizin will not entitle the wife to dower: for the land was merely in *transitu,* and never vested in the husband, the grant and render, being one continued act." He adds, "but if the land abides in him, for the interval of but a *single moment* it seems the wife shall be endowed thereof." And to such an extent was this doctrine carried by a jury in Wales, that it was held that where the father and son were both hanged in one cart, the son was supposed to have survived the father by appearing to struggle longest, whereby he became seized of an estate in fee by survivorship, in consequence of which seizin his widow took an estate of dower. *Cro. Eliz.* 503.

Upon this distinction, I am conttent to rest my judgment in this case. The bargainor sells the land to the bargainee, on condition that he pays the price at the stipulated time; and whether this contract *which is one,* is contained in the same instrument, as it well may be, or in distinct instruments, executed at the same time, can make no possible difference. Taking the whole transaction together, it is a conditional sale, and the title never did vest in the mortgagor, except incumbered with the debt, to wit, the purchase money. Suppose that Wade, after receiving the deed from Barnes had refused to execute the mortgage, could not the contract have been rescinded? Unquestionably. Then it took both the instruments to consummate the agreement. It is like a feoffment and defeasance at common law, which is deemed but one conveyance, 2 *Bla. Com.* 327; *Co. Lit.* 236 *b.* Where two instruments are executed at the same time, be-

tween the same parties, relative to the same subject matter, they are to be taken in connection, as forming together, the several parts of one agreement. 1 *John. Cas.* 95. Where a deed is given by the vendor of an estate, who takes back a mortgage to secure the purchase money, at the same time he executes a deed, the deed and mortgage are to be considered as parts of the same contract, as taking effect at the same instant, and as constituting but one act; in the same manner as a deed of defeasance, forms with the principal deed, to which it refers, but one contract, although it be by a distinct and separate instrument. *Holbrook vs. Finney.* 4 *Mass. Rep.* 569.

The cases in NewYork are numerous upon the point under discussion, 3 *Wend.* 233; 1 *ib.* 164; 6 *Cowen* 316; 2 *Cowen* 218; 15 *John.* 457. *ib.* 477. And the only dissenting opinion is that of Ch. J. Thompson in *Stow vs. Tift*, 15 *John.* 458. And it may be inferred, that he would have concurred in a case like that before us, where it constituted a part of the original agreement that a mortgage was to be given back, and I should unhesitatingly hold with him, that, unless the deed and mortgage were executed in pursuance of a previous agreement to that effect made between the parties, that the judgment lien would attach; because otherwise, during the interval between the deed and the mortgage, the title certainly vested really in the debtor. And it is exactly upon this pivot that this case turns. For if the land abided but for a single moment in Wade, it would be subject to his judgment debts. It does not depend upon the length of duration; the question is—Was it in Wade and out of him, *quasi uno flatu,* and by one and the same contract? For if so, he never was substantially seized of the land so as to subject it unconditionally to the judgment lien.

Our opinion, therefore is, that the subsisting judgment against Wade could sell his equity of redemption—Its lien attached on that and nothing else.

                              Judgment affirmed.

Scott, Carhart & Co. vs. Warren & Spicer.

BENNING, J., concurring.

Barnes sold and conveyed land to Wade, taking from him a mortgage on the land, to secure the payment of the purchase money. The conveyance and the mortgage back were made at the same time.

. At that time, Scott, Carhart & Co. held a judgment against. Wade, the purchaser.

To which was the land subject, the mortgage or the judgment? To the mortgage, in the opinion of the Court below, and in my opinion.

What belongs to a man may be bound by a judgment against him, but not what does not belong to him.

When a man purchases land from another, and one of the terms of the purchase is, that the land shall be a security for the payment of the purchase money, all that comes to belong to the purchaser, is such an interest in the land as is consistent with a liability in the land to be sold. for the payment of the purchase money; and, therefore, such an interest in the land as this is all that a judgment against the purchaser can bind.

That this is so in a case in which all the terms of the purchase are put in *one* instrument, nobody, I suppose, doubts. And can it make any difference that the case is one in which some of the terms of the purchase are put in one instrument and some in another. I think not. It frequently happens, that to get the whole of a transaction resort has to be had to several pieces of writing; but the transaction, when gathered from the separate pieces, is the same, in legal effect, as it would have been if got from only a single piece.

And in the present case, is it not clear that Barnes sold the land only on condition that it was to stand as a security for the purchase money? I think it is. That is the conclusion to which we must come, it seems to me, from considering the simultaneousness of the deed from Barnes to Wade, and of the mortgage back from Wade to Barnes. It is true,

that in the order of the events of the transaction, the deed may have preceeded the mortgage; but, as the transaction was incomplete until the mortgage was made, no rights vested under the deed until the mortgage was made. In a word, the rights under the mortgage vested *simultaneously* with the rights under the deed. The mortgage had to be made to render the deed good. If the mortgage had not been made, the vendor might have compelled a re-delivery of the deed.

If it be true, therefore, that one of the terms of Wade's purchase was, that he was to mortgage back the land to the vendor, Barnes, to secure the payment of the purchase money, then, all that ever came to belong to Wade was only such an interest in the land as was consistent with the liability of the land to be sold for the payment of the purchase money. And this was all that the judgment could bind.

But, say that the effect of the deed was, to pass the whole legal title out of Barnes into Wade: yet that title did not abide in Wade for a single instant; it merely passed from Barnes into him, and out of him back again into Barnes, without stoppage, and as quick as thought.

An interest that merely passes through the husband without abiding in him for a single instant, is not such an interest as will entitle his widow to dower in the land. Would his judgment creditors stand on a better footing than his widow?

And then, it is to be borne in mind, that all equity is in favor of giving the mortgage the priority. The judgment creditor did not credit on the faith of the mortgaged property, for he credited before his debtor had acquired any interest in that property. The mortgage creditor credited exclusively on the faith of that property.

Upon the whole, I think that the mortgage had priority over the judgment and therefore that the Court below was right in overruling the demurrer.

Scott, Carhart & Co. vs. Warren & Spicer.

McDONALD, J., dissenting.

This was a demurrer to a bill in Chancery. The bill alleges that on the 29th day of December, 1853, Merrick Barnes sold and conveyed to James W. Wade ten acres of land, a part of lot No. 328, in the first district of Dougherty county, and at the same time took a mortgage from Wade to secure the purchase money. Wade entered into possession and occupied the land for eighteen months. He then left the county and sent word to Barnes, he not having paid him for the land, to do the best he could with it. He sold the land on the 12th day of August, 1854, to the defendants in error, and transferred to them the mortgage taken from Wade. The plaintiffs in error obtained a jugment against Wade in Baker Superior Court in 1852, on which an execution was issued and levied on the land as Wade's property. The bill prayed that the sale under the levy might be enjoined, and that the lien of the vendor might be enforced against the judgment creditors of Wade, and that a mistake in the drawing of the original notes and mortgage might be corrected.

The grounds of demurrer are :

1st. Want of equity in complainants bill.

2d. That the bill is multifarious. And,

3d. For insufficiency in form, and want of proper parties.

The Court below overruled the demurrer, and held that the vendor's lien existed and should be enforced against the judgment creditors of Wade. .

This Court affirms that judgment. I cannot agree with the majority of the Court in this judgment, and now proceed to state my reasons for dissenting therefrom. The judgment of Scott, Carhart & Co., bound the land the moment it was conveyed by Barnes to Wade. That conveyance vested the legal title in Wade to all intents and purposes. He could have maintained ejectment for its recovery against Barnes and every one else. Barnes could not have entered upon

him. He could not have evicted him by any legal proceeding whatever. The property was his, and he had the deed, which was the just cause of possessing that which was his. But it is said that Barnes was the vendor of the land to Wade, and had, what is technically called, the vendor's lien thereon for the payment of the purchase money, and that he was entitled to enforce it in a Court of Equity. Now, I understand the vendor's lien to be a natural equity, that land sold shall stand charged for the payment of the purchase money, without any special agreement for that purpose, and that the vendee stands seized in trust, a secret invisible trust, evidenced by no writing, for the vendor for the purchase money, and that this trust can be known to the vendor and vendee only and to those to whom it may be communicated in facts. 7 *Wheaton's Rep.* 50–51. Where a mortgage is given, the vendor's lien, which is known only in equity, can no longer exist, and the vendor having elected to take a mortgage is confined to his legal lien on the mortgage. "*Expressum facit cessare tacitum.*"

By the execution of the deed to Wade, the legal title passed to him, and the property of course; and by the statute, all the property of a party against whom a verdict shall be rendered, shall be bound from the date of the first judgment. *Cobb's Dig.* 494. The legal lien of the judgment attached upon the land the moment the deed was executed to Wade, and before the mortgage could possible have been executed. The same act did not vest the title in Wade and pass it out of him as a conduit, as in the case of a fine. The act of conveying the land and vesting the property in Wade, was the act of Barnes. The act of reconveying it and giving a mortgage on the land was the act of Wade, and could have had no effect, if the property had not been in him at the time. But a mortgage is not the absolute conveyance of the estate, but, as in this case, it is a conveyance on condition, that if the mortgagor does not pay the money at the the time stipulated, the estate shall then become absolute in the mortgagee.

Scott, Carhart & Co. vs. Warren & Spicer.

At the time of the execution of the mortgage, then, the estate did not pass absolutely out of the mortgagor, and of course did not vest absolutely in the mortgagee. In England and in some of the States of the Union, when the condition is broken, the estate is so absolutely vested in the mortgagee that he may maintain ejectment and recover the premises. That is not the case here. In this State, a mortgage in its inception is nothing more than a security for the payment of money, and it so continues to be, and nothing more, after the breach of the condition.

The mortgage, therefore, creates a lien only, and not an estate, and the mortgagee, in relation to the mortgaged property, stands on the same footing of any other creditor. He is entitled to be paid according to the date of his lien. His lien takes effect from the date of his mortgage; that of the judgment creditor from the date of his judgment.

But it is said that it would be inequitable and unjust, against the principles of "*natural equity*," to allow the creditors of Wade to seize and sell lands purchased by him, and for which he has never paid, to the exclusion of the vendor. This is an argument to be addressed to the Legislature and not to the Courts. But the incaution of the vendor has brought him into the difficulty. It is not the fault of the law. He made the land the property of Wade by conveying the title to him. He need not to have done it. He might have retained the title and the property until the payment of the purchase money. He might have given a bond to make the title on the payment of the purchase money. Wade, then, would not have had the property in the land. He would not have had an equity against Barnes to have demanded a title, until every dollar of the purchase money was paid; nor would a trust have been raised by implication, before the payment of the money, in Barnes for Wade's benefit, which would have authorized the creditors of the latter to have levied on and sold it. These arguments, founded in the equity of a case, cannot prevail over the law. There can-

not be a stronger equity than that which exists in favor of a bona fide purchaser of property from a debtor against whom a judgment exists, for which he pays full value, without actual notice of the judgment; and yet no Court of Chancery, on the ground of such equity solely, will interpose to enjoin the judgment creditor from proceeding against that property.

But it is said that the title did not remain in Wade a moment, but passed immediately out of him back to the vendor. The groundlessness of this position is shown by the complainants' bill, for if the title and property are still in Barnes, whence the necessity of these proceedings ?   The complainants' suit has no foundation if the property be not in Wade. If it is not Wade's property, the plaintiffs in error could not succeed at law.   But it is because they must succeed at law, that the bill is filed to enforce a lien upon Wade's property which, it is insisted, is entitled to the protection of a Court of Chancery against the creditor's judgment.   The principle contended for in this case has been acted on and recognized in some of the States of the Union ; so far as it has been acted on, I think it has its foundation in the case of *Amcotts against Catherich, Cro. Jac.* 615, and a case cited in argument by counsel in that case.   In that case the husband and wife were tenants in special tail.   They had issue and the wife died.   Mathew Amcotts, the husband, made a deed of feoffment to the use of himself for life, and after, for the use of Alexander, his son in tail, and a letter of attorney to make livery ; before livery, he married again, and after livery was made to the above uses, he died.   The tenants endowed the wife, who took defendant to husband.   Alexander, the son, entered and brought trespass.

The question was upon the wife's right to dower.   It was held that she was not dowable, because the livery did not gain the husband any new estate ; that, before the feoffment, he was not seized of such an estate of inheritance as the issue of the second wife could inherit ; and the feoffment was to himself for life, and after to the use of his son Alexander in

tail, which passed the estate, *eo instanti*, out him, so that he had no seizin of which the wife was dowable.

That case does not sustain the principle. The husband had no estate of inheritance descendible to the issue of the second marriage.

In New York, the opinion of the Bench was by no means settled in support of the principle contended for in this case, and the Legislature passed an act to give the preference to mortgages, given to secure the purchase money of an estate, over judgments. I think it requires Legislation here to do it.

Wade purchased the land and received a conveyance for it. This passed the title to him. He entered into possession of the land and occupied it for eighteen months. He gave to his vendor a mortgage, at the time he received the convey-ance, on the same premises, to secure the payment of the purchase money. This did not revest the title in Barnes, but only gave him a security. This security was a lien on the land, not a title to the estate. Wade abandoned possession of the land after eighteen months possession of it, and sent word to Barnes to do the best he could with the lot. This message did not revest the title in Barnes. Barnes sold the land to the complainant and made no conveyance. He sim-ply transferred to them the mortgage taken from Wade. All the rights they acquired by the purchase and transfer of the mortgage, was the right to foreclose the mortgage; and the foreclosure would not vest in them the title. The land must be sold, and the proceeds of the sale would be the property of Wade, subject to the mortgagee's or his assignee's right to be paid the amount of the mortgage debt. The balance would be Wade's absolutely. The report of the Sheriff to the Court would be that he had so much money in his hands, raised on the sale of the defendant's property. The rights of contesting creditors to the fund in Court, would, under our Statute, depend on the dates of their respective liens. Against this statute, I do not think a Court of Equity can relieve.

But if this was a case of a vendor's lien, and our Statute

interposed no impediment, the case in Wheaton, already re
ferred to, settles, that such a lien cannot be enforced against
creditors.

I think, therefore, that the judgement of the Court below
ought to be reversed.