THOMAS. B. ELFE and THE MACON BUILDING AND LOAN ASSOCIATION, plaintiffs in error, vs. JANE COLE, defendant in error.

[1.] The one year's support allowed by the Acts of 1838 and 1850, to the family of a testator or intestate, out of the effects of the estate, is paramount to the lien of a mortgage given by the deceased in his lifetime.

[2.] The doctrine of mortgages considered, and the previous decisions of this Court upon this subject, reviewed and affirmed.

The deed of mortgage conveyed the legal title into the mortgagee.—BENNING J.

Equity, from Bibb county. Tried before Judge LAMAR, May Term, 1858.

Jane Cole, for herself, and as next friend of her three children, filed her bill for specific performance and injunction, alleging that her husband, Henry H. Cole, died possessed of a house and lot in the city of Macon; and that Thomas B. Elfe took out letters of administration on his estate, and possessed himself of it. On application, commissioners were

appointed by the Ordinary, to set apart to complainant and her children, a support for the year next succeeding her husband's death. With notice to defendants, who were present, assisted by counsel, the commissioners set apart the said house and lot for the year's support, valuing the support at $650. and the lot and improvements at $750, and required complainant to pay to the association $100, it being represented by Elfe, that said Macon Building and Loan Association had a mortgage lien on said premises, for the full value thereof, and that these said premises be exempt from levy and sale under any judgment against said deceased; and to pay to Elfe $35 70 for an advance made the estate; complainant paid Elfe the money and took his receipt therefor; tendered the money to the association, which they refused to receive. After complying with the award of commissioners, she demanded the house and lot of Elfe, and he refused to deliver it, on the ground that he would be liable to the association for the rents, which she sought to avoid, by offering to indemnify him against the loss; Elfe was a stockholder in the association; that the association was proceeding to foreclose its mortgage, and after judgment would collude with Elfe, and endeavor to defeat complainant's rights to the premises. The bill prayed a perpetual injunction against said association, to restrain them after judgment, from selling said property; and that said association be made a party defendant to the bill, and claims double rent from Elfe, who held the premises wrongfully after demand, when the title had vested in complainant and her children by virtue of the award of the commissioners, and prays to be delivered possession of the premises, and a perpetual injunction also, restraining Elfe from selling the premises, &c.

The answers were responsive, and they went to trial, agreeing that the association should have all its rights, as though it had filed a cross bill. The material facts were admitted by the answers.

The verdict was for plaintiff, and defendants moved for a new trial on the following grounds :

Because the verdict of the jury was contrary to law and the evidence, and against the equity of said case.

Because the verdict is against law, and strongly against the weight of evidence.

Because the Court erred in charging the jury that, according to the case made by the answers of defendants, the claim of complainants, under the award of the commissioners, took precedence of any and all claims and liens set up by the answers of defendants, in behalf of said Macon Building and Loan Association, and that therefore, the jury ought to find a verdict for complainants, decreeing a specific performance of the said return, under which complainants claim, and setting apart said land to complainants, free from any and all claims and liens in behalf of said loan association, set up in said answer.

Because the Court erred in charging the jury that, according to the case made by the evidence, they must find for the complainant a verdict, decreeing against defendant a specific performance of the return of the persons appointed by the Ordinary to set apart for complainant, a year's support out of the estate of Henry H. Cole, deceased.

Because the Court erred in charging the jury that, according to the case made, complainants were entitled to recover of defendant, Elfe, rent for the premises in dispute, from the time when said return was made.

Because the Court erred in charging the jury, that the complainant was entitled to recover the amount of rent which the premises were proven to have been worth, without regard to what Elfe may have received. Which motion the Court refused, and defendant's counsel excepted.

LANIER & ANDERSON, for plaintiffs in error.

STUBBS & HILL, for defendant in error.

*By the Court.*—LUMPKIN J. delivering the opinion.

When this case was up before, (23 *Ga. Rep.* 235,) we held, that the one year's support allowed the family of testator or intestate, out of the estate of the deceased, was paramount to the mortgage lien of the loan association, or any other debt due, or obligation, which the decedent could contract. Such is the express language of the law. *Cobb,* 296, 298. And in this opinion all the Judges concurred. We do not see that the present case differs from that. It is true that it is alleged that it was cotemporaneously agreed between all the parties, that concurrently with the execution of the deed from Elfe to Cole, that Cole should substitute his mortgage to the loan association, in lieu of Elfe's, which has been done. And the attempt is made to analogize this case to that of *Scott, Carhart & Co., against Warren & Spicer,* (21 *Ga. Rep.* 408,) in which it was held, that where A. takes a conveyance in fee, and at the same time, under an agreement to that effect, mortgages the land back to the grantor, that the transitory seizin of A. for an instant, when the same act that give him the estate conveyed it out of him, did not so vest the title in A., as to subject the land to an existing judgment lien, to the exclusion of the mortgage lien.

But the analogy between the two cases fails entirely in this. In *Carhart's case,* the vendor and mortgagee were the same persons. The title to the land was in the mortgagee originally. Before the transfers it was his property. But this lot never belonged to the loan association, but was bought by Elfe, of Freeman & Robert, and by Freeman conveyed to Cole. Elfe might have stipulated for his own indemnity, to retain the title in himself, till the substitution of mortgage was made. And for that purpose his agreement would have been enforced. But that has been done. There is no complaint on that score. Cole executed a mortgage in pursuance of his undertaking with Elfe, with which the loan as-

Elfe and Macon Building and Loan Ass'n vs. Cole.

sociation were satisfied, and thereupon, released the mortgage previously executed by Elfe to them.

This is, then, the identical question decided by this Court already, in this case. Had Elfe died without selling this lot, his family would have been entitled to the year's support, as against the loan association. And having conveyed to Cole, and Cole dying, the family of Cole, under the facts of the case, occupy precisely the same situation that Elfe's would have done.

Conceding all this, my brother Benning now thinks the other decision made in this case was wrong, and that we ought to retrace our steps. His view, if I rightly understand it, is briefly this: That while it may be true, that a mortgage is a security for a debt, yet to constitute it such, the title is conveyed to the mortgagee. And that, consequently, upon the death of the mortgagor, the property mortgaged is not a part of his estate, except the equity of redemption. And that our foreclosure Act of 1799, has made no change in the common law, as to the rights of the mortgagor and mortgagee. That this being so, upon the death of Cole, he had only an estate in the equity of redemption, and that this only could be taken into the account, in making an allowance for his family. And thus, if one dies with his property encumbered with a mortgage or mortgages, for more than it is worth, that he leaves no estate out of which any provision can be made for his family.

I hold the contrary of this proposition to be law in this State; and I proceed to state the grounds of my opinion.

This question first came before this Court in 1846, the year after its organization, in the case of *Davis et al. against Anderson and others*, (1 *Kelly*, 176,) and was discussed with great ability, as the arguments of the learned counsel, in the reports, will establish. When it was solemnly decided, Judge Warner delivering the opinion of the Court, that "a mortgage in this State is nothing more than a security for the payment of the debt; and that the title to the mortgaged property re-

mains in the mortgagor, until foreclosure and sale, in a manner pointed out by the statute."

I beg leave to add, that that judgment ought never to have been called in question again. It settled a great question, upon which vast consequences depended. It was no innovation upon past adjudications, but in accordance with the practice of the Courts for near a half century. It should have remained undisturbed.

It seems, however, that the same question came up again in *Winter vs. Garrard*, (7 *Ga. Rep.* 183,) when the same eminent Judge who pronounced the former opinion, was again the organ of the Court. Judge Warner said: "In this State, as we have already held, a mortgage is only a security for the payment of the debt of the mortgagor. The foreclosure of a mortgage, in this State, does not vest the fee in the mortgagee; it only authorizes a sale of the property, and directs the surplus, after discharging the debt, to be paid to the mortgagor or his agent."

Again, in 10 *Ga. Rep.* 65, in the case of *Ragland vs. The Justices, &c.*, we say: " With us, this is not an open question." Shall the day ever come when this can be affirmed of any principle in Georgia? It would seem not.

In *Scott, Carhart & Co. vs. Warren & Spicer*, already referred to, my brother McDonald, one of the few remaining types of the old school lawyer, as well as gentleman, thus discourses upon this doctrine: " At the time of the execution of the mortgage, then, the estate did not pass absolutely out of the mortgagor, and of course did not vest absolutely in the mortgagee. In England, and in some of the States of the Union, when the condition is broken, the estate is so absolutely vested in the mortgagee, that he may maintain ejectment and recover the premises. This is not the case here. In this State a mortgage, in its inception, is nothing more than a security for the payment of money; and it so continues to be, and nothing more after the breach of the condition. The mortgage, therefore, creates a lien only, and not an es-

tate; and the mortgagee, in relation to the mortgaged property, stands on the same footing of any other creditor. He is entitled to be paid according to the date of his lien. His lien takes effect from the date of his mortgage; that of the judgment creditor from the date of his judgment."

Thus stands the case then upon authority.

But apart from this current of decision from our own Court, let us scrutinize for a moment, the grounds upon which these decisions rest. And startling as the enquiry may appear, I ask, even in England, in whom is the legal seizin of land, the mortgagor or the mortgagee? This seizin, if in the mortgagor, before the mortgage is executed, must remain in him, or be transferred to the mortgagee. Is it in the mortgagee? It will be found upon examination that, even in Britain, this doctrine has undergone a great change, notwithstanding the explicit terms in which it is usually found laid down in elementary writers, and the *dicta* of Courts. At first, mortgages were feoffments, or conveyances of land, from debtor to creditor, with condition that if the money was not paid at the day appointed, the lands became absolutely vested in the creditor, freed from the condition. *Lit. sec.* 332. Even a subsequent tender of the money did not avail the debtor. He lost the land, no matter how high the value, or how small the sum it was designed to secure. 5 *Reports*, 95, 114.

This was too oppressive to be borne, and both, Courts of Law as well as Equity, united to establish a different doctrine. And since the reign of James I., the right of redemption has been so fixed, that the mortgagee could not defeat it, even by incorporating in the mortgage, an agreement to that effect. 1 *Vernon*, 33, 138, 190, 488; 2 *Vernon*, 520. Since that time, the mortgagee has had no certain or absolute estate in the land, until after foreclosure; and that is the creation of a new title, and not the confirmation of an old one. 1 *Atkins.* 603. Even if he recovers the possession by entry, or by suit, he holds not for himself by *title*; he must render

a strict account of the profits; and his possession may be at any moment at the will of the mortgagor terminated. 1 *Vernon*, 45, 476; 2 *Atk.* 534. He cannot use it as his own. He will not be permitted to do waste. *Cro. Jac.* 172; 3 *Atkin.* 728. He cannot sell or lease so as to bind the mortgagor. 9 *Mod.* 1. His estate is not considered as real, but personal. 2 *Vernon*, 401. It is a mere security, a mere charge on the land. 2 *Burrows*, 969.

A mortgagee is not considered a freeholder for any purpose whatever. His property is personal assets. If he devise it, it will not pass by the words land or real estate. It is not subject to curtesy or dower, the necessary attendants upon legal estates in land. A transfer of the debt puts an end to it. 2 *Bur.* 969. It has not one characteristic of a legal estate. It is a mere security for money, and a power to gain possession of the land in order to make it. *Reeves D. R.* 53.

I repeat, is the seizin in the mortgagee? Because it was so of old, when all the consequences followed, shall it be still so held, when none of the legal incidents attach, even in England? To hold so, is to disregard reason and every sensible distinction.

If the seizin be not in the mortgagee, it must be somewhere —it is clearly in the mortgagor. It must be in one of them. There is not one quality of a legal estate that does not attach to the mortgagor. It is never treated as personalty. It is not so in settlements by executors and administrators, or in sales by Sheriff, under executions. It is always, and every where, located as real estate in the hands of the mortgagor. It will descend to his heirs. If devised, it requires a will having the requisites of realty. The mortgagor, by the law of England, is entitled to every benefit, and must bear every burden appertaining to freeholders.

I concede, that in England, the mortgagee, by entry or ejectment, may obtain the possession; but that is only for a special purpose; and even when the possession is taken from

the mortgagor, his title is not altered any more than it is when the tenant of a term gets possession from the landlord or tenant in fee. The mortgagor is still the owner. He is entitled to have all the profits, to the last cent, applied to the payment of the mortgage debt. And at any moment he may recover possession by the payment of the money, with or without the consent of the mortgagee. Is he not the owner?

But I forbear to enlarge upon this branch of the argument. If these positions be sound, the pretense set up here for excluding the family of Cole from any allowance out of this property because, under the mortgage, the title or legal estate is in the loan association, is wholly without foundation. And moreover, they go to maintain, upon a basis not to be shaken, the adjudications of this and the Circuit Courts, to the effect, that the interest of the mortgagee is a mere incumbrance or security, and that the legal estate remains in the mortgagor, until after judgment of foreclosure and judicial sale under it. Did the right of the family of Cole depend entirely upon the common law, independent of any aid from our own legislation, I should be prepared to adjudge in their favor. But I cannot avoid the impression, that the claim does derive much support from our own statutes.

While we have attempted to show, that even if our foreclosure Act did not take away the mortgagee's right to get possession of the land, after condition broken, by suit or entry, that that would not at all affect the point at issue in this discussion, still is it not a significant fact, that no practice or effort of this sort has been known in Georgia since 1799? Has any lawyer ever known an ejectment brought by the mortgagee against the mortgagor? The assertion of such a right, after a suspension of sixty years, would be preposterous. Why should this remedy be resorted to when the process of foreclosure is so much better? Is it strange that it should have been discontinued?

Further, the law in sundry places, in treating of mortgages, speaks of them, not as transfers of the title to property,

but as *liens.* Cobb, 172, 173, *and elsewhere.* In the distri-
bution of money, a mortgage is considered as a lien, and
takes its place according to its priority.

Mortgaged lands are treated by executors and administra-
tors just as the other real estate of the testator or intestate,
and mortgage debts are classified by the statute with the oth-
er claims against the estate, and the order of payment spe-
cified.

The Act of 1799 *(Cobb,* 288,) declares, that "when any
guardian, executor or administrator, chargeable with the es-
tate of any deceased person, to him, her or them committed,
shall die so chargeable, his, her or their executors or admin-
istrators shall be compellable to pay out of his, her or their
estate, so much as shall appear to be due to the estate of such
orphan or deceased person, *before any other debt of such tes-
tator or intestate.*"

We have decided that under this Act, the orphan was en-
titled to be paid, to the exclusion of the mortgage creditor.
(10 *Ga. Rep.* 65.) If this decision be right, and it has been
acquiesced in so far as we know, can there be any doubt
that the maintenance provided for widows and children
shall be reserved "*notwithstanding any debts, dues or obliga-
tions which the testator or intestate might owe?*" (*Acts of*
1838 *and* 1850.)

It is suggested that the doctrine we contend works a
great practical evil, and that this case illustrates it because
the money of the association went to pay for this lot. Sup-
pose it did? Would not even a vendor's lien have to yield
to a claim like this? Why should the debt of the loan asso-
ciation be put upon a better footing than the vendor's lien?
It is less favorable. The company never owned nor parted
with this property. They simply advanced the money to
pay for it *at a most remunerating premium to them, and
ruinous to the borrower.* Every creditor is supposed to
have advanced in money or property a consideration to his

debtor. Why the preference set up in behalf of this particular? To this particular class of indebtedness? Even a trust debt, the most sacred known to the law, and which overrides a mortgage, must yield to this paramount claim of the family. In short, our opponents would have the Acts of 1838 and 1850 to read—every "debt due or obligation" shall be postponed to the year's provision for the family of a deceased husband and father, save and except a debt due the loan association for money bought and secured by mortgage!

To accord to the family nothing but the equity of redemption, amounts to nothing, of course, in cases of insolvency, and yet the law intervenes and rescues even this portion of an insolvent's estate, and appropriates it to the widow and children.

But I am done. A friendly writer admonishes me that I weaken my opinions by making them too long. I will endeavor to profit by the criticism.

It is insisted that no more rent can be recovered of Elfe than was received by him in this case, unless it could be shown that he was guilty of fraud, or gross negligence. The charge of the Court was, that he was liable for what the property was proven to have been worth. This ground would not make it necessary to send this case back, and we are not inclined to require the verdict to be sealed. Mr. Elfe was a member of this loan association as well as the administrator of Cole. His position is somewhat antagonistic. After the property was demanded, he no longer acted as the agent of the family, but held adversely to them. And we do not think it hard that he should be made chargable with what he could have got for the rent of the lot.

It is insisted, in the last place, that the verdict is against the weight of evidence, because proof of what the property actually brought, it is argued, is entitled to more credit than the speculative belief of two witnesses as to what it ought to bring. We are not aware of any rule of evidence to this effect.

What one rents land or hires negroes for, is one thing. What he might have obtained is quite another, and different thing. The latter, we believe, is the usual mode of charging delinquent trustees. This lot has been wrongfully withheld from this family; and the conduct of the defendant stands condemned by the judgment of the law in thus acting.

Judgment affirmed.

McDonald J. concurring.

Henry H. Cole, deceased, in his life time, purchased of the plaintiff in error half of lot No. 7 in square 77 in Macon, containing one-fourth of an acre, and received a deed conveying the same to him on the eleventh day of December, 1854. At the time of the purchase the lot was under mortgage to the Macon Building and Loan Association, for money borrowed from the association by the plaintiff in error. Cole agreed that on receiving the title, as a part of the consideration of purchase, to substitute his mortgage on the same property for that of plaintiff in error to the association. On the day after he received the above deed of conveyance, he executed a mortgage thereon to the said association, agreeably to his contract, and he became a debtor thereby to that amount to the association. After these things were fully arranged and the plaintiff in error had been released by the Macon Building and Loan Association, Cole died, and his widow applied to the Ordinary for a years' support and maintenance for herself and children. The Ordinary appointed five appraisers under the Act of 1856, to assess the sum necessary for their support and maintenance for twelve months. They assessed the sum of $650, and finding that there was no property belonging to the estate except the lot and two shares in the association, and furniture of little value, they set apart to her and the children the lot and improvements, on her paying to the mortgagee the difference between their unencumbered value and the same assessed.

It is not pretended that the assessment is unreasonable or excessive. In fact, there was no controversy upon that point. But it is insisted, that by the contract between Elfe and Cole, the legal estate to the lot never so vested in the latter as to entitle his widow to an allowance out of it under the application made by her ; that as soon as the title vested in him it passed out of him, in equity, by virtue of the contract, although the mortgage was not executed, in fact, until the day after the conveyance to him by Elfe : and in support of the position the case of *Scott, Carhart & Co. vs. Warren & Spicer*, 21 *Ga. Rep.* 408 and other cases, are referred to. It is further insisted that, independent of the special agreement Cole made with Elfe, he was bound to extinguish the lien which existed on the property at the time of the purchase, before he could acquire such a property in the lot as would admit of support and maintenance to be allowed to the widow out of it.

When Elfe purchased the property from Freeman & Roberts, the title passed from them. There was no lien held by them on the property for the purchase money, and they must have executed to him a conveyance before he could mortgage it to the association. This mortgage was to secure the payment of borrowed money. When he sold the lot to Cole, it was a matter of agreement that Cole should mortgage the property to the association, and, in that manner, obtain his release from that liability. He conveyed to Cole. The title was thus vested in him. According to his contract he executed a mortgage to the association, and Elfe was released. What did this arrangement accomplish? Cole became the debtor to the association in the place of Elfe, but he was no purchaser from the association. In regard to the widow's and childrens' rights, the association substituted the possible claim of Cole's widow and children for that of Elfe's widow and children. It substituted the risk of Elfe's life for that of Cole, and also of the amount of the

210        SUPREME COURT OF GEORGIA.

Elfe and Macon Building and Loan Ass'n. vs. Cole.

allowance to which the wife and children of one or other of these mortgagors would be entitled on his death. If the property had remained with Elfe, and he had died, it might have taken all for the twelve month's support and maintenance of his wife and children. The right of the widow and children is superior to the debts, dues or obligations of the deceased. *Cobb* 296.

It is true, as contended for by counsel for the plaintiff in error, that either Cole or Elfe was obliged to extinguish the lien on the property before Cole could get a good title. He did extinguish it, but gave another. He converted Elfe's debt into his own, and substituted his lien for Elfe's. If the lien had remained, binding the property for Elfe's debt, the enforcement of it would have defeated any title derived from Elfe of junior date to the lien, and with the title, all rights depending on it must have failed also.

It follows that, if the award of the appraisers vested the title in the widow and children upon the payment of the money, and the money was tendered and refused, the complainants are entitled to a decree for the rent upon the payment of the money awarded to the association. The jury have decreed the payment of the money by the complainants, and have decreed to them the rents. The verdict is for a sum proven by two witnesses. I am of opinion that the judgment of the Court below ought to be affirmed.

BENNING J. dissenting.

Cole mortgaged the lot of land, to the loan association, to to secure a debt nearly of the value of the land, and, without having paid the mortgage, died, leaving his interest in the land, as about his whole property.

Were his widow and children entitled to a year's support out of the land in preference to the rights of the mortgagee? If they were not, it is manifest that the Court below erred in refusing a new trial. I think, that they were not; and why I think so, I will now proceed to state.

There are two statutes on the subject to which, the question refers, one passed in 1838, the other in 1850. The former declares; " that when any person shall die, leaving a widow and children, or a widow, or child, it shall and may be lawful for the executor or administrator thereof, to allow out of the effects of such deceased person, a reasonable support and maintenance for the space of twelve months, next ensuing, immediately after the death of such testator, or intestate, notwithstanding any debts, dues, or obligations, of said testator or intestate." *Cobb* 296.

The statute of 1850, substitutes the word, " estate," for the word, " effects ;" in other respects, it is like the statute of 1838, except, that it provides for the case in which, there is no " administration." *Id.* 298.

I take the legislative intention to have been, that the two words were to have the same meaning, and, that, a meaning which the word, " estate," as being the larger one, better expresses. I shall, therefore, use that word, when I have occasion to use either.

The allowance, then, was to be out of the *" estate"* of Cole.

The question, therefore, is, what was his *estate* in this lot of land ?

His estate in the lot, was either the whole interest in it, or only the equity of redemption in it; the whole interest, if the mortgage deed conveyed no interest out of him, into the mortgagee; only the equity of redemption, if the deed conveyed the legal title out of him, into the mortgagee.

Now, I say, that the deed conveyed the legal title out of· him, into the mortgagee.

That the deed should do so, was certainly *the intention* of the parties to it. The words they use, are the very words which the law itself has selected, as the best and aptest of any, for expressing such an intention ; are, indeed, the very words which do express the intention to convey the legal title,

when they are used in any other sort of a deed. The mort-gagor "gives," "grants," "bargains," "sells," the land, to the mortgagee.

I say, then, that the *intention* of the parties was, that the deed should convey the legal title, into the mortgagee.

The intention of the parties to a contract, is to govern, if there is not something making the intention illegal.

Is there anything making this intention of the parties illegal? Nothing, certainly, in the *common law*. On the contrary, there is in the common law, a rule which specially adopts and enforces this very sort of intention; a rule which specially says, that the deed of mortgage conveys the legal title into the mortgagee.

Is there any *statute* making this intention, illegal, and so repealing this rule of the common law?

That there is none doing it *expressly*, is certain; and that this fact is so, is of itself, almost, sufficient to require us to say, that there is none doing it impliedly; for it must be most improbable, that the Legislature, if intending to repeal so important a rule, would adopt the indirect mode of repeal by implication, in preference to the direct mode by expression.

Is there, then, any statute which, by *implication*, repeals this rule? any statute repugnant to it? any statute saying, that the deed of mortgage, shall not convey the legal title into the mortgagee?

In *Davis vs. Anderson, (1 Kelley* 193,) it is said, that " A mortgage in this State, is nothing more than a *security* for the payment of the debt; and the title to the mortgaged property remains in the mortgagor, until foreclosure and sale in the manner pointed out by statute." This would seem to say, that a mortgage being in this State, but a mere securi-ty for the debt, is owing to some law peculiar to this State; and, that any law making a mortgage but a mere security for the debt, makes it such a thing, that it cannot convey the legal title, into the mortgagee.

If these two propositions are true, I admit, that there must

be some law of Georgia, which, by implication, repeals the common law rule.   Are they true, then ?

First as to the first :   I say, that by the common law itself, (considering equity as a part of it,) a mortgage is nothing else than a security for a debt, and has been nothing else, for ages.

" They" (courts of equity,) "soon arrived at the just conclusion, that mortgages ought to be treated, as the Roman law had treated them, as a mere security for the debts due to the mortgagee." 2 *Story Eq. Sec.* 1013 ; see *Section* 1016.

" So in mortgages being only a lender, as the other," (a bond,) is a personal security for the money lent," &c. 3 *Black* 433.

" Equity having determined that the mortgaged debt shall be considered the principal, and the land a pledge," &c. *Coote on Mortgages* 492

" On this principal rests the doctrine of foreclosure, which we are about to consider, and in the application of which, the forbearance of equity on behalf of the mortgagor, seems to be carried to its utmost limits, even so far as, in some instances, to work a serious detriment to the mortgagee; for equity is ready to receive the excuses of the mortgagor not only for the purpose of giving him time to procure the money previously to the foreclosure, but also for the purpose of opening the foreclosure, even after many years quiet possession by the mortgagee, under an absolute decree of foreclosure, confirmed, signed, and enrolled." *Ibid.*

" In one case, the foreclosure was opened after sixteen years." *Id.* 496.   See, *Burgh vs. Langdon*, 15 ; *Viner*, 476 ; 2 *Eq. Ca. Ab.* 609 ; do. 605 ; *Cocker vs. Bevis*, 1 *Ch. Ca.* 61.; *Ismood vs. Claypool*, 1 *Ch. Rep.* 139 ; *Ford vs. Wastell*, 6 *Hare*, 229 ; 2 *Phil.* 591 ; *Edwards vs. Cunliffe*, 1 *Madd.* 287 ; (" in which the period for payment was enlarged the fourth time.") *Eyre vs. Hanson* 2 *Beav.* 478 ; *Geldard vs. Hornby*, 1 *Hare*, 251 ; *Jones vs. Creswick*, 9 *Sem.* 304 ; *Ellis vs. Grif-*

*fith*, 7 *Beav.* 83 ; *Alden vs. Foster*, 5 *Beav.* 592 ; *Garlick vs. Jackson*, 4 *Beav.* 154 ; all cited in the same work.

It is true then, that by the common law itself, a mortgage is nothing but a security for the debt. It, therefore, did not require any law peculiar to this State, to make a mortgage, but a security for the debt. The common law, which this State shared with England, and its sister States, was quite sufficient to do that.

The first of the two propositions, then, is not true. I pass to the second.

Is it true, that any law which makes a mortgage to be, but a security for the debt, makes the mortgage such a thing, that it cannot convey the legal title of the mortgaged property, into the mortgagee ? In other words, can it not be, that a mortgage may be only a security for the debt, and yet, convey the legal title into the mortgagee ?

By the common law, as we have seen, a mortgage is but a security for the debt, and yet by that law the mortgage conveys the legal title into the mortgagee. This all admit ; and this, of itself, is conclusive. But I go on.

Whatever gives the creditor, the legal title to his debtor's property, gives him the very best means of applying that property, to the payment of his debt. To say, therefore, that the mortgage gives the mortgagee, the legal title to the mortgaged property, is, to say, not, what will prevent the mortgage from being a security for the debt, but, what will render it a better security for the debt.

The pawnee has the legal title to the pawn ; the vendor of land who gives only his bond for titles, has the legal title to the land ; the trustee in a deed of trust, with a power to sell, and pay himself his debt, has the legal title to the trust property ; the assignee in a deed of assignment to secure creditors, has the legal title to the assigned property ; yet, in all of these cases, there is nothing but a security for the debt.

Or, is it to be said, that in these cases, also, the legal title

is not in the pawnee, and the other creditors, respectively? There is the same reason that this should be said in these cases. But nobody has as yet gone that length.

It may well be, then, that a mortgage may be only a security for the debt, and yet, may convey the legal title into the mortgagee. It, follows, that the second of the two propositions, cannot be true.

The two propositions seem to be the foundation on which *Davis vs. Anderson,* (1 *Kelley*) rests.

Thus far, then, we find nothing to repeal the common law rule, that the mortgage conveys the legal title into the mortgagee.

Is there any thing else, as to which, it might be argued, that it repeals this rule? One thing else, I have heard mentioned, is, the foreclosure law contained in the Judiciary Act of 1799. That law, in defining "the method of foreclosing mortgages on real estate," says after providing for a rule nisi, that "unless the principal, interest and costs be so paid, the Court shall give judgment for the amount which may be due on such mortgage, and order the property mortgaged to be sold in such manner as is prescribed in cases of execution, and the money shall be paid to the mortgagee or his attorney; but where there shall be any surplus, the same shall be paid over to the mortgagor or his agent." *Cobb* 1137. This is saying, that on foreclosure, the property, instead of becoming *absolutely* the mortgagee's is to be sold by the Sheriff, and the money arising from the sale of it, or so much as may be needed, is to be applied to the payment of the debt. But is that saying what repeals the common law rule which puts the legal title, into the mortgagee? Is that saying what is repugnant to the common law rule? May it not be, that this sale by the Sheriff, &c., may take place, and yet the legal title be in the mortgagee? Most assuredly. The vendor of land who merely gives his bond for titles, retains the legal title in himself, and, to secure the purchase money. Yet he may have a decree in equity, for the sale of the land

and the application of the money arising from the sale, to the payment of the purchase money; and this decree is a thing that has to be executed by the Sheriff. The same is true of the pawn-broker and his pawn. The same is true, in many of the cases of assignments, to secure creditors, and, in many of the cases of other deeds of trust, to secure the payment of money.

Nay, in many cases of mortgages themselves; those mortgages which, beyond question, put the legal title into the mortgagee, this same thing has always been true, by the common law. A rule that the mortgaged property shall be sold under judicial process, and the proceeds of the sale be applied to the payment of the mortgage debt, is no new rule.

In all cases in Ireland and in many cases in England, this has always been the rule.

"In Ireland, it is the practice, instead of a foreclosure, to pray that the estate may be sold, and the moneys applied in satisfaction of the encumbrances, 'and "the surplus paid to the mortgagor." *Coole Mort.* 493.

Yet did ever any body hear the idea advanced, that in Ireland, the mortgagee does not have the legal title.

"In certain instances, also in England, a decree for a sale instead of foreclosure, may be obtained; as, if the mortgage be of a dry reversion, or if the heir of the mortgagor be an infant." "It also seems, that if the bill for foreclosure be taken *pro confesso*, the Court will order a sale; and if one of the executors of the mortgagee be himself the mortgagor, the bill by the executors, shall be for a sale. If the mortgagor die, and the heir and executor be the same person, who by his answer admits the personal estate deficient for payment of debts, a sale may be obtained in the first instance without a reference for an account of the personal estate. Lord Hardwick seems to have thought, if the security was scanty, a sale might be decreed." *Id.* 493, 494.

"Mr. Fanblanque" observes, "the safer course is, for the

mortgagee to pray a sale; but note, he cannot pray·a sale, without previously praying a foreclosure." *Id.* 495.

Many cases are cited for these positions; 13 *Ves.* 205; *How vs. Vigures,* 1 *Ch. Rep.* 18, ; 16 *Viner,* 476; *Booth vs. Rich,* 1 *Vern.,* 295; *Scholfield vs. Heafield,* 7 *Sim.,* 669; *Mondey vs. Mondey,* 1 *V. and B.* 293; *Davies vs. Dounding,* 2 *Keen.,* 245; *Foster vs. Eddy,* 18 *L. J., Ch.* 151 *N· S.* ; *Dashmoode vs. Bithazey, Moseley,* 196; *Lucas vs. Seale* 2 *Atk.* 56; *Daniel vs. Skipwith,* 2 *B. C. C.* 158; *Earl of Kennoul vs. Money,* 3 *Swans,* 208, *n.* ; *Powell on Mortgage,* 1015.

Now, would it not astonish an English lawyer to be told, that the legal title, in all of these cases, was not in the mortgagee.

But, if, in these cases, various and numerous as they are, there is no repugnancy between the law which provides for a sale of the mortgaged property, and the law which causes the legal title to pass into the mortgagee, it cannot be, that there will be any repugnancy between the two laws, in any case.

Hence, I say, that the foreclosure law, aforesaid, in the Act of 1799, is not repugnant to the common law rule, which clothes the mortgagee with the legal title. Indeed, this very provision itself, speaks of *"foreclosing," "foreclosure,"*—words implying the existence of the legal title in the mortgagee.

But at least, I may say, that there is no *necessary* repugnancy, between this foreclosure rule in the Act of 1799, and the common law rule which puts the legal title into the mortgagee; and if I may, that is enough; for the repeal by implication never takes place, except in the case in which the repugnancy between the two laws is *necessary.* Especially is this true, if a repeal would be followed by important changes. And a repeal if it took place here, would be followed by very important changes; changes greatly to the disadvantage of the mortgagee, as a security. Let us see.

The mortgagee with the legal title in him, is the *owner* of the property. Therefore he can defy liens and claims that are merely against the *mortgagor* or *his* property, if they are of younger date than the mortgage. And what a number and variety of these liens or claims there may be. The mortgagor's widow's right of dower, is a claim against *his* estate; the right to a year's provision, which the mortgagor's widow and children are entitled to, in preference to any other lien, &c., (the right in question in the present case,) is a right against *his* " estate;" the lien of carpenters, masons, &c., for work which they have done for the mortgagor, is a lien against *his* property; the claims of orphans against a mortgagor, as guardian, or as executor, or as administrator, which claims he leaves unpaid, at his death, are claims against *his* estate· Here are some of these liens and claims. These being all against the property of the *mortgagor*, the mortgagee, with the legal title in him, may safely defy them, if they are younger than his mortgage. Because, in that case, they are not even against the interest which *he* has, in the property, but only against whatever may remain of the property after his interest has been taken out of it; in a word, they are only against whatever is the *mortgagor's* interest in the property. Whereas, the mortgagee, with the legal title not in him, but in the mortgagor, has to succumb at once, to any of these liens and claims, no odds how young they may be, for the law gives them all a preference over his mortgage, if it is but a mere lien on the *mortgagor's* property.

Again; the rents go with the legal title. Therefore, if the legal title does not go into the mortgagee, he loses the security of the rents.

So, the covenants of warranty, and other covenants real, contained in the mortgage, become worthless, absurd.

Again, the terms, *alienation, conveyance, title,* and similar ones, are of constant recurrence in contracts, in statutes, and in other writings. With the legal title in the mortgagee, they

include mortgages; not, with it not in him. What changes are shadowed forth here.

Finally, if we say, that a mortgage's being but a mere security for money, is reason enough to prevent the mortgage from taking the legal title out of the mortgagor, and putting it into the mortgagee. Then, we must say the like thing, in like cases.

A pawn is but a mere security for money; when a man sells land, giving a bond, for titles to be made on payment of the purchase-money, the bond is a security, for the money; the deed of trust, made by the borrower to the lender, with a power of sale to pay the lent money, is a mere security for money; the assignment to trustees for the benefit of creditors, is a mere security for money. These, then, are all like cases.

Therefore we ought to apply the principle to them, and say, that the legal title is not in the pawnbroker; not in the vendor; not in the lender; not in the assignee; but, in, the pawnor; the vendee; the borrower; the insolvent assignor. Consistency requires us to go this length.

These then, are the changes, or some of them, to be wrought, by holding that the part of the Judiciary Act of 1799, relating to the foreclosure of mortgages, repeals the common law rule which puts the legal title into the mortgagee. Being so many, and so great as they are, I am sure I may say, that we ought not so to hold, unless obliged to do it; unless there is a *necessary* repugnancy between the rule and the Act.

Now, there is, between the two, no approach to repugnancy, I think; I feel sure, no *necessary* repugnancy.

It is not pretended, I believe, that there is any other Act that repeals the common law rule.

I come, then, to the conclusion, that the deed of mortgage, in this State, still conveys the legal title, into the mortgagee. This is a conclusion which I have been struggling against,

for some time.   I can struggle against it no longer.   The question it concerns is no light one.

I dissent from the judgment of the Court.