A. P. CORNELIUS v. NATHANIEL M. BURFORD.

It has been repeatedly held, and may be considered well settled, that a levy upon sufficient personal property to satisfy the execution is a satisfaction of the debt, if the property be taken from the possession of the defendant in execution.    (Paschal's Dig., Art. 3775, Note 867.)

The judgment creditor, after such a levy, must look for his money to the officer who made the levy; for, so far as the debtor is concerned, the debt is paid, and he is discharged from further liability on account of it.

But if the levy be overreached by a prior lien, or be abandoned at the request

or for the benefit of the debtor, or be defeated by his misconduct, or if he retain possession of the property, and it be not sold, then the levy is not a satisfaction of the judgment. (See Paschal's Dig., Art. 3775, Note 867, p. 620.)

It was not error to refuse a charge which did not comprise all of the facts material to be considered in the determination of the issue presented by the charge, when the effect of the charge, if given, would have been to exclude from the consideration of the jury the material facts not referred to in the charge. (Paschal's Dig., Art. 1464, Note 562.)

See this case for facts held to be sufficient to repel the presumption that an execution and the judgment from which it issued were satisfied by a levy made upon personal property.

The amount of property on which an officer may levy by virtue of his process is not defined by law, and it would be extremely difficult to prescribe a rule on the subject. A large discretion in this respect is of necessity to be confided to the officer. (Paschal's Dig., Art. 3775, Note 867.)

There is no doubt that an officer is liable in damages for making an excessive levy; nor that a sale would be void if the value of the property sold was so greatly in excess of the amount to be raised as to constitute a fraud on the part of the officer, or as to evidence a reckless indifference to the obligations of his trust. (Paschal's Dig., Art. 3775, Note 867.)

The amount of an execution and the value of the property taken by virtue of it are not in all cases the only facts to be considered in determining whether the levy was excessive. In this case, for instance, the additional facts, that the agent of the defendant in execution pointed out the property to the officer, and that, within two days thereafter, the agent received from the defendant in execution a deed to the property, under which he now claims it, were also important to be considered in determining the question. (Paschal's Dig., Art. 3775, Note 867.)

If the agent of a defendant in execution point out to an officer for levy the whole of a tract of land, although a part would suffice, and the whole of the tract be purchased at the sale by a stranger, it is clear that the agent is estopped from impeaching the act of the officer or the title of the purchaser on the ground that the levy was excessive.

APPEAL from Dallas. The case was tried before JOHN J. GOOD, Esq., special judge, chosen by the parties because NAT. M. BURFORD, the presiding judge, was a party.

Trespass to try title, instituted by the appellee on the 4th of June, 1860, to recover from the appellant one hundred acres of land in Dallas county.

The plaintiff derived his title by purchase of the land at constable's sale. The land was levied upon as the property

of J. B. Hudson, defendant in execution.    It was admitted that the judgment and execution, being for some $52, were valid.

The defendant plead "not guilty," and answered specially that the constable's sale, under which the plaintiff claimed, was void, because the levy was excessive.    And further, the defendant alleged that a previous execution from the same judgment had been levied by the constable upon other property sufficient to have satisfied the execution, which other property was never sold by said constable, and that the judgment was fully paid off and satisfied before the issuance of the execution by virtue of which the land was sold.    And further answering, the defendant says, that on the 9th of May, 1859, he purchased said land from J. B. Hudson, the defendant in execution, and paid for the same $950.    Wherefore he asks that said Hudson be made a party defendant, and, in case the plaintiff recover the land, that this defendant have judgment against Hudson for his said purchase-money and interest.

The plaintiff denied generally the allegations of the defendant.

J. B. Hudson answered as a party defendant, and simply admitted his sale of the land to the defendant, A. P. Cornelius, for the amount alleged by the latter.    No further notice of Hudson appears to be taken in the pleadings or judgment.

Upon the trial, it was admitted that the title to the land was perfect in Hudson at the date of the levy, which was the 7th of May, 1859.    Plaintiff introduced the four executions successively issued upon the judgment; on the second of which, issued September 23, 1858, there appeared indorsed and erased a levy dated the 26th of September, 1858, on one white jennet, and another levy, dated three days afterwards, on one yoke of work oxen.    By an unerased indorsement, dated the 14th of February, 1859, the constable returned the execution "not satisfied."    A third

execution was returned "not satisfied" on the 7th of May, 1859, on which date a fourth execution was issued, and was levied the same day by the constable on the land in controversy. The land was sold on the 7th of June, 1859, and the plaintiff became the purchaser at the sum of $41.

The plaintiff introduced his deed from the constable, dated June 9, 1859.

The defendant, A. P. Cornelius, introduced a deed to himself from Hudson, the defendant in execution, for the land in controversy. This deed was dated on the 9th of May, 1859, being two days after the levy. It expressed a consideration of $950, but did not acknowledge its receipt nor contain any warranty of title, either general or special.

The defendant put in evidence the second execution, with its several indorsements already shown, and introduced the constable, who testified that the jennet levied upon was sold, and her proceeds applied to older executions against Hudson then in his hands; that the oxen levied on were not sold, for the reason that, at the date of their levy, witness had several older executions in his hands against Hudson, who, however, paid off such executions before the day of sale. This witness further testified, that before levying upon the land in controversy he called upon the defendant, A. P. Cornelius, who was the agent of Hudson, and asked him to point out property upon which to levy the fourth execution, dated May 7, 1859, and that A. P. Cornelius pointed out the land in controversy, and told witness to levy upon and sell the same.

The defendant proved by a witness that the tract of land, which the witness understood to be that in controversy, was worth, at the date of the constable's sale, $6 50 per acre. There was other evidence, but it does not seem to be material.

The court charged the jury as follows: "This is an action of trespass to try title to one hundred acres of land. Plaintiff claims the land as a vendee at a constable's sale.

If he have shown a valid judgment and execution, (and I charge you that those offered in evidence are,) and a levy and regular sale made by virtue thereof, and also that the property in controversy was the property of J. B. Hudson on the day of levy, then the plaintiff has made out his case, and is entitled to a recovery."  .

The following instructions were asked by the defendant, but refused by the court: "1st. If the jury believe from the facts proved that a levy had been made by virtue of an *alias* execution issued upon the same judgment, for the satisfaction of which the land claimed by plaintiff was sold, previous to the levy upon the land, and that the property thus levied upon was not sold, then the levy upon the land is void, and the purchaser at the constable's sale acquired no title.     2d. If the jury believe the levy upon the land was excessive, they will find for the defendant.     In order to determine whether the levy is excessive, you will look to the amount of the execution and the value of the land."

The jury returned a verdict in favor of the plaintiff; judgment accordingly; a new trial refused; and defendant, A. P. Cornelius, appeals, assigning for error the refusal of his charges.

*E. C. McKenzie*, for appellant.

*George W. Guess*, for appellee.

COKE, J.—The refusal of the court to give the instructions asked by appellant on the trial below is assigned as error.     Upon the first instruction, the question arises as to the effect of the levy made by virtue of the execution issued on the 23d day of September, 1858.

It has been repeatedly held, and may be considered well settled, that a levy upon sufficient personal property to satisfy the execution is a satisfaction of the debt, if taken from the possession of the defendant in execution.     The

creditor, after such a levy, must look to the officer making it for his money; for, so far as the debtor is concerned, it is paid, and he is discharged from further liability on account of it. (4 Cow., 417; 12 Johns., 207; 4 Mass., 403; Bryan v. Bridge, 10 Tex., 153; White v. Graves, 15 Tex., 187.)

But if the levy be overreached by a prior lien, or be abandoned at the request of the debtor, or for his benefit, or be defeated by his misconduct, or if he retain possession of the property, and it be not sold, then it is not a satisfaction of the judgment. (Green v. Burke, 23 Wend., 501; Ostrander v. Walter, 2 Hill, 329; Churchill v. Warner, 2 N. H., 298; Folsom v. Chelsey, Id., 432.)

The execution in question was returned "not satisfied." But proof was made on the trial that it was actually levied on one white jennet and one yoke of oxen, that the jennet was sold, and the proceeds applied to the payment of an older execution, then in the hands of the constable, against the debtor, Hudson, and that the oxen were not sold at all. It was also proved that the appellant, Cornelius, was the agent of the defendant in execution, Hudson, and that as such agent he pointed out the land in controversy to the constable to be levied on and sold, and that two days after the levy he received from Hudson the deed under which he claims title in this suit. The charge under consideration, asked by the appellant and refused by the court, is to the effect, "that if the jury believe that a levy had been made by virtue of a former execution, issued on the same judgment previous to the levy on the land, and that the property thus levied upon was not sold, then the levy upon the land is void, and the purchaser acquired no title." The levy of the execution, and the fact that the property levied on was not sold, were not all the facts in proof material to be considered by the jury in deciding on the issue sought to be presented by this charge.

The proof goes further, and, in our opinion, satisfactorily repels the presumption that would otherwise have

obtained, that the debts had been extinguished by the previous levy.

Why did the appellant, Cornelius, the admitted agent of the defendant in execution, point out more property to be levied on and sold, if the constable already had in his possession and unaccounted for sufficient property to satisfy the judgment seized by virtue of a former execution?

Why did he lie still and permit this land to be sold for the purpose of paying a judgment, if that judgment had already been satisfied?

The fact of pointing this land out and permitting it to be sold would seem to be conclusive evidence that the property levied on by virtue of the former execution had been disposed of to the satisfaction of the defendant in execution otherwise than in payment of this judgment, and this conclusion corroborates and is supported by the return of the officer on the execution.

The effect of the charge, if given, would have been to exclude these facts from the consideration of the jury, which would have been manifestly unjust and improper. The charge was properly refused, because inapplicable to the facts proved, and calculated to mislead the jury.

The second charge asked, the refusal of which is assigned as error, reads as follows:

"2d, If the jury believe the levy upon the land was excessive, they will find for the defendant. In order to determine whether the levy is excessive, you will look to the amount of the execution and to the value of the land."

Our statute nowhere defines the duties of an officer making a levy in respect to the amount of property he may subject to his process, and it would be extremely difficult to prescribe a rule for that purpose.

A great deal is necessarily confided to the sound discretion of the officer. The proposition is not to be disputed that a sheriff ought not to sell more of the defendant's property than a sound judgment would dictate to be suffi-

cient to satisfy the demand, provided a part can be reasonably and conveniently detached from the residue of the property, and be sold separately.

In Wordye v. Baily, Noy's, 59, the court said, that if the sheriff upon a *fieri facias* for forty shillings take five oxen, each of the value of £5, and sell them all, the defendants may have an action of trespass against him.

In Tiernan v. Wilson, 6 Johns. Ch., 415, the chancellor said:

"There was, then, no excuse for such an outrageous breach of duty as setting up the plaintiff's interest in two distinct lots; that is, his moiety of two hundred and nine and one-half acres in one lot, and his moiety of two hundred and thirty-six and one-half acres in the other lot, and exposing that whole interest (which, at the lowest calculation, was worth nearly $800) in one parcel and upon one bid, to raise so small a sum as $10 50. I shall accordingly set the sale aside, as fraudulent and void in law."

In the same case, it is said that the rule, that no more property should be sold than is reasonably necessary to satisfy the debt, rests on principles of obvious policy and universal justice, and does not need the aid of any positive law to support it.

There can be no doubt but that a sheriff or constable would be liable in damages to the aggrieved party for a breach of duty in this respect; nor can there be any doubt but that a sale of property so disproportioned in value to the amount to be raised, as to create the presumption of fraud or of reckless indifference to the obligations of his trust on the part of the officer, would be void.

It would be a perversion of the spirit and policy of the power with which the officer is intrusted to tolerate, much less sustain, such an abuse of it.

It is indispensable, however, that a certain amount of discretion be intrusted to the officer who makes the levy, because of the impossibility of fixing certain rules,

14—xxviii

applicable to all cases, which shall govern him, and the propriety of his action must therefore be determined in each case by the facts and circumstances of that case.

The charge in question sought to submit to the consideration of the jury but two questions of fact in determining whether or not this levy was excessive and the sale under it void: one the value of the land, and the other the amount of money to be raised by virtue of the execution. These were very important facts to be considered by the jury in that connection; but it is believed that the fact that the appellant, Cornelius, acting as the agent of the defendant in execution, Hudson, pointed out the land in controversy to the constable to be levied on and sold, and we may add the fact, that two days after this levy was made the appellant received from Hudson the deed to this land, under which he claims title in this suit: these facts were also important to be considered, in order to arrive at a correct conclusion on this question.

It is quite clear that, after pointing out not a part of the land, but the whole tract, to be levied on and sold, and it is purchased at the sale by a stranger, he is estopped from impeaching the act of the officer or the title of the purchaser, on the ground that the levy is excessive.

These controlling facts were, by the terms of the charge, excluded from the consideration of the jury; and the charge was, for that reason, properly refused by the court.

The general charge of the court we think sufficiently presented the law of the case to the jury. If the charges asked and refused had been so constructed as to be applicable to the facts of the case and proper to be given, they would doubtless have been submitted to the jury by the court; but we do not see how a different result could have been attained under the proof in the case. There is no error in the judgment, and it is

AFFIRMED.