DANIEL D. ATCHESON v. J. C. HUTCHISON ET AL.

1. ASSIGNMENT OF ERRORS.—See an assignment of errors held to be too general, the court only examining the record because it was manifest that valuable lands had been sold at execution sale at a grossly inadequate price, with charge that the execution was illegally issued and the levy excessive.

2. EVIDENCE — DOCUMENTS EXECUTED AT SAME TIME — STAY OF EXECUTION.—See several documents held to form part of the same transaction, and not together constituting evidence of a contract to stay an execution for twelve months.

3. RIGHT OF DEFENDANT IN EXECUTION TO POINT OUT PROPERTY.— It was sufficient, in an issue whether defendant in execution had been deprived of the right to point out property, that the sheriff, before levying, made reasonable search for the defendant, and that the evidence showed that the defendant had reasonable opportunity of so doing.

4. EXCESSIVE LEVY.—It is the duty of the sheriff to make a proper allowance for depreciation in price as the usual effect of forced sale.

5. INADEQUACY OF PRICE.—Land at sheriff's sale brought less than one-tenth of its value, but the evidence showed that the action of the defendant in execution tended to produce that result: *Held*, Insufficient ground to set aside sale, in the absence of fraud or irregularity in the issuance of the execution or in making the levy.

6. SHERIFF'S SALE—MODE OF SALE.—While the execution law authorized and directed that sheriff's sales of land should be made in tracts of forty acres, and the law was disregarded, it is no cause of setting aside the sale, in the absence of testimony showing that the defendant in execution demanded that sale should be made in that mode, and that by sale in that manner a greater price would have been obtained.

APPEAL from Grimes. Tried below before the Hon. James R. Burnett.

The facts are fully stated in the opinion.

*Daniel D. Atcheson,* for appellant, cited Sayles' Prac., sec. 598; Beale *v.* Ryan, 40 Tex., 409; San Antonio *v.* Lewis, 9 Tex., 69; Teas *v.* McDonald, 13 Tex., 349; Mackay *v.* Martin, 26 Tex., 61; Brown *v.* Lane, 19 Tex., 207; Ayres *v.* Duprey,

27 Tex., 606; Freem. on Executions, 297; Paschal's Dig., art. 3775; Taul v. Wright, 45 Tex., 388; Chamblee v. Tarbox, 27 Tex., 145; Rover on Jud. Sales, secs. 403, 404; Bryan v. Bridge, 6 Tex., 142.

*J. C. Hutchison*, for appellees, cited Baker v. Clepper, 26 Tex., 634; James v. Fulcrod, 5 Tex., 513; Paschal's Dig., art. 3775; Cook v. De La Garza, 13 Tex., 431; Kendrick v. Rice, 16 Tex., 259; Alexander v. Miller, 18 Tex., 897; Ross v. Lister, 14 Tex., 473; Howard v. North, 5 Tex., 315; Herndon v. Rice, 21 Tex., 457; Andrews v. Richardson, 21 Tex., 296.

GOULD, ASSOCIATE JUSTICE.—D. D. Atcheson brought this suit to set aside an execution sale of sundry tracts of land to Hutchison and the other defendants and to cancel the deeds made to them by the sheriff. The grounds on which the sale was attacked were: 1st. That the execution was controlled by Hutchison and the other purchasers, and was issued in violation of a binding agreement. 2d. That the levy was made in disregard of his right to point out property, and in disregard of the statute regulating the order in which property of different kinds is to be levied on. 3d. That the levy was excessive and oppressive. 4th. That the price at which the lands were sold was grossly inadequate, alleging a conspiracy between defendants to procure his lands at a nominal price. No question was made below, or is made here, that the necessary parties were not all before the court; nor are any questions presented requiring a fuller statement of the pleadings. The trial resulted in a verdict and judgment for defendants.

The facts developed on the trial, so far as they are material to the questions to be passed upon, are as follows: On February 13, 1874, Bateman and others recovered in the District Court of Grimes county a judgment against one Taliaferro, as principal, and Atcheson, as surety, for the sum

of $5,908.29, with eight per cent. interest from that date. Execution having issued on this judgment, Atcheson, in March, 1874, sued out a writ of error, giving a supersedeas bond. Afterwards an agreement in writing was made between Atcheson and the judgment plaintiffs, represented by their attorneys, (Hutchison and Carrington,) that Atcheson would pay on the judgment, on or before March 1, 1875, the sum of $1,000, and would abandon his writ of error, in consideration whereof the owners of the judgment agreed not to permit execution to issue before December 1, 1875. The alias execution issued on June 18, 1875, was levied, on July 12, on sundry tracts of land as Atcheson's property, and the sale complained of was had on the first Tuesday in August. No evidence was adduced of the payment of the $1,000 on March 1, but, on the part of Atcheson, it is claimed that the payment appeared from the following instruments of writing introduced by defendants:

"$1,050.                    GALVESTON, TEXAS, *March* 3, 1875.

"Three months after date pay to the order of myself one thousand and fifty dollars, value received, and charge to account, with interest at twelve per cent. per annum after maturity.          (Signed)          DANL. D. ATCHESON.

"To Wolston, Wells & Vidor, Galveston."

On the face of this draft is written: "Accepted. Wolston, Wells & Vidor."

"GALVESTON, *March* 3, 1875.

"Whereas on the 3d day of March, 1875, Wolston, Wells & Vidor advanced for D. D. Atcheson to me, as attorney for the plaintiffs in the judgment of R. L. Heflin and others against D. D. Atcheson and others, obtained in the District Court of Grimes county, said amount not to be credited on said judgment, but to pass to them (Wolston, Wells & Vidor) one thousand dollars interest with the other plaintiffs in said judgment, to bear the interest that the judgment bears from this date: Now, I agree and contract that if in ninety days

from this date the said Atcheson does not pay them the said thousand dollars, and the interest added in his draft accepted by them, then I will proceed to collect said judgment by execution, levy, and sale, in the interest of the plaintiffs therein and said Wolston, Wells & Vidor, and of the amount collected, if all, will pay them said thousand dollars and the accrued interest at the judgment rate, but if only a part is collected, then I will pay to them their *pro rata* in the proportion (of) their interest of one thousand dollars bears to the whole amount of the judgment at this date. I, in effect, become coördinately with the other parties their attorney for the collection on said judgment of the one thousand dollars they own in the same, and they, in effect, plaintiffs owning that interest in said judgment. And I obligate myself to respect the equal rights of themselves and the plaintiffs, according to their ratio of the same.

(Signed)          J. C. HUTCHISON.

"P. S. When Atcheson refunds the $1,000 to W., W. & V., he is to have credit of that amount on the judgment.

(Signed)          J. C. HUTCHISON."

Also the following:

"In consideration of the payment of one thousand dollars by Wolston, Wells & Vidor to me, I hereby agree that execution issue on that certain judgment obtained by R. L. Heflin and others against me at the February Term, 1874, of the District Court in and for the county of Grimes, State of Texas, in ninety days from the date hereof; provided, nevertheless, that if I pay to the said Wolston, Wells & Vidor said sum of one thousand dollars on or before the expiration of said ninety days, then this agreement to be void; otherwise to remain in full force and effect.

"GALVESTON, *March* 3, 1875.

(Signed)          DANL. D. ATCHESON."

The only other evidence bearing on the subject of the payment by Atcheson, was Hutchison's testimony that Atcheson

did not pay the $1,000 on the 1st day of March as he agreed to, and did not pay the money to Wolston, Wells & Vidor as per agreement; that witness held the draft of Atcheson to Wolston, Wells & Vidor, who had been paid their interest in the judgment.

The sheriff testified that he went to Atcheson's, which is one mile north of Navasota, three times to get a levy, but found him away, — once on the 21st of June, and again on July 7. Other witnesses testify to two visits of the sheriff to Atcheson's house, seeking a levy, and it appears that Atcheson was informed of the fact of his having been there for that purpose, and that Atcheson returned to his house from Galveston on July 9. A witness testified that Atcheson usually went to Navasota every day, and could have been found by any one inquiring for him. This witness testified about four mules owned by Atcheson, of which he informed the sheriff, but knew of no other personal property.

The levy was made on July 12, without, on that day, going to Atcheson's or inquiring for him, on land pointed out by the attorney for the plaintiffs in execution, and recites that the sheriff went on two separate occasions to the residence of Atcheson, found him absent from the county, and found no personal property on which to levy. The levy was on eight hundred and forty-eight acres of the Campbell league, sold to Templeman, one of the defendants in this case, for $155; forty acres sold to defendant Hutchison for $200; two hundred and four acres of the Whiteside league to Hutchison for $93.89; two hundred and four acres out of east half of Arnold league, sold to Hutchison for $75.48; and seven hundred and thirty-two acres of the west half of the Arnold league, sold to Owen and Hutchison for $732. The evidence is that this last tract of land was valuable; some of the witnesses say worth $15 per acre; but some of the same witnesses say that at sheriff's sale it might not sell for $5 per acre, and one witness says at such sale it might sell from $1 to $5 per acre. There was on it about two hundred acres of open land,

renting usually at about $5 per acre. The record shows nothing as to the value of the other tracts levied on and sold, further than may be inferred from the price for which they sold. It was in evidence that, on the day after the levy, the sheriff met Atcheson in the city of Navasota and told him of the levy. He says he did not then ask Atcheson to point out property, and it does not appear that Atchison then claimed the privilege of doing so. A mistake in one of the notices of sale—Thursday being written for Tuesday—was then corrected, at Atcheson's suggestion.

On the day of sale, Atcheson warned purchasers not to buy, claiming that the levy was irregular and that the purchaser would get no title. On the other hand, Hutchison testified that he tried to make the lands bring a good price, and other witnesses testify that he staked his professional reputation that the title was good. Several witnesses testify that Atcheson's action at the sale tended to depress the prices, and that Hutchison did all he could to encourage persons to bid. It appears, however, that at the time of the sale a suit was pending, brought to June Term, 1874, in behalf of Bateman, Heflin, and others, the parties who had recovered the judgment against Taliaferro and Atcheson, to satisfy which the sale was had, in which Atcheson's title to the seven hundred and thirty-two acre tract was assailed, and that this suit was brought by Hutchison as attorney. The papers and proceedings in several cases were introduced in evidence by Atcheson, constituting a large part of the record. From these it may be gathered that in 1862 Atcheson, owning the west half of the Arnold league, including the seven hundred and thirty-two acres in question, made a verbal sale thereof to Chester A. Bulkley for $50,000, of which Bulkley at some time paid $25,000 in Confederate money. On January 1, 1874, Atcheson conveyed the half league to Clara V. Bulkley, wife of said Chester Bulkley, the consideration expressed being five joint notes of said Chester and Clara, each for $5,000, and payable in one, two, three, four, and five years. In Febru-

ary, 1866, Clara, the wife, died, and in August following the husband also died, heavily in debt and these notes still unpaid. Separate administrations were had on the estate of each, and there was a protracted contest between the administrator of the husband's estate, aided by Bateman, Heflin, and others, creditors of that estate, on the one hand, and the administrator of the wife's estate, aided by Atcheson, on the other, as to which estate owned the half league of land and the crop and personal property thereon. The result of this litigation was, that the land remained on the inventory of the wife's estate, and Atcheson having proved up the notes and claimed a lien, the land was sold as part of the wife's estate to satisfy his lien, and was purchased in by him; but the result further was, that the administrator of the husband's estate recovered a judgment for the personal property sued for. It may be surmised that the judgment against Taliaferro and Atcheson, under which the sale sought to be set aside was had, was founded on this recovery of personal property for the benefit of the creditors of Chester A. Bulkley, and it does appear that the suit pending in behalf of those creditors at the time of the sale sought still to subject the west half of the Arnold league in the hands of Atcheson and his vendees to their claims against the estate of said Chester. In October following the sale that suit was dismissed. Two witnesses testified that some three or four years before the sale Atcheson sought to raise money on the security of this land, but that the litigation pending as to his title prevented him from obtaining the loan. The bidders and purchasers at the sale were Templeman, Hutchison, ·and Owen,—the first, half owner of the Bateman - Heflin judgment; the second, attorney controlling and interested in said judgment, and also attorney in the pending suit; and the third, Owen, having been written to by Hutchison, and jointly interested with him in the purchase of the seven hundred and thirty-two acres. Owen, on the stand, denied any combination to procure the lands at a low price, and, beyond the

pending litigation and facts already detailed, there was no evidence of any design to depreciate the sale. It appears that at the sale something was said as to the community interest of Atcheson's children by his first wife in some of the land. It does not appear that this had reference to the seven hundred and thirty-two acre tract, and Atcheson, on the stand, testified that his children had no interest in that tract. On the other issues he did not testify. Some of the other land sold had been conveyed to one of his children.

There is no evidence, save that already detailed, that Atcheson had personal property or wild lands subject to execution. Whilst in Galveston, having been informed by his son of the sheriff's demand for levy, he wrote, inclosing a paper pointing out for levy the part of the west half of the Arnold and another tract, both embraced in the levy made, but requiring that the sale be in tracts of forty acres. The son did not see the sheriff or notify him of the levy pointed out, and it does not appear that the sheriff had any notice thereof, or of Atcheson's wish to have the sale in tracts of forty acres. The charge of the court was, in effect, that if Atcheson paid the $1,000 on or before March 1, 1875, or substantially complied with his agreement, then the execution was illegally issued. The charge then proceeds: "To entitle the plaintiff to set aside the sale, if made under a legal judgment and execution and the defendants have paid the purchase-money, it devolves upon him to show fraud on the part of the defendants, or such excessive levy, or such inadequacy of price, together with circumstances of unfairness on the part of defendants as amount to fraud. Mere inadequacy of price, even if very gross, is not, of itself, sufficient evidence of fraud; but where the price is grossly inadequate without plaintiff's fault, then but slight evidence of fraud or collusion on the part of the purchaser would be sufficient to set aside the sale. In determining whether the levy was excessive and whether the price was inadequate, it is proper to consider any embarrassments and suspicions that the plaintiff himself may have

thrown on the title; and if you find that any inadequacy of price is owing to plaintiff Atcheson's own conduct at that time, then the sale cannot be set aside on that ground.   A party against whom execution is issued has the right to point out the property for levy, and if he fails to exercise this right, it is the duty of the officer to levy first on personal property, if any, and then on lands.   If the party or authorized agent is not found in the county after reasonable inquiry and search, or if he fails to point out property when notified, and he has no personal property liable to execution, then the sheriff has the right to levy on the lands of the party.   If you find that the sheriff substantially complied with the law in making the levy, or if he did not, but the purchasers acted in good faith and had no notice of any irregularity of the sheriff in making the levy, then the levy was valid."

The case went to the jury with this charge, no additional instructions being asked.   After the verdict for defendants, plaintiff moved for a new trial: 1st. Because of an error of the court in permitting the sheriff to amend his return on the execution.   The record shows nothing of any such action of the court.   2d. Because the court erred in its charge as to the agreement filed in the cause.   3d. Because the court in effect charged that plaintiff could not maintain his action against the defendants before first having tendered and paid the purchase-money.   4th. Because the court misled the jury in the charge as to the rights of the defendant in execution to point out property, and should have charged in the language of the statute.   5th. For causes assigned in a motion against the sheriff in another cause, which motion does not appear in this record.

There is a bill of exceptions to the exclusion of evidence of the value of land adjoining the seven hundred and thirty-two acre tract, and the refusal to allow a witness to testify that the seven hundred and thirty-two acre tract, if divided into forty-acre tracts, would sell for a larger sum, and in the statement of facts is the following: "Plaintiff offered to show

his tenants were run off by attachments; objected to, and objection sustained; to which ruling of the court plaintiff excepted."

The assignment of errors is as follows:

"1st. The court erred in all its instructions embraced in the charge to the jury.

"2d. Motion for new trial. The causes assigned in said motion are assigned as error, the same being overruled by the court. The court erred in not allowing the plaintiff to introduce evidence as contained in plaintiff's bill of exceptions set forth, and as also noticed in the statement of facts.

"3d. Plaintiff assigns as error that the judgment shows on its face illegality, as fully appears from the execution under and by virtue of [which] the lands were sold by the sheriff on 3d of August, 1875."

The indefiniteness of these assignments of error is such, that this case might have been disposed of with but little investigation. The evident fact, however, that a tract of land worth ten or twelve thousand dollars has been sold at execution sale for $732, has led us to give the assignment of errors the most liberal construction, and has induced us to give to the entire case a careful and repeated examination. Certainly, if such a result has ensued from a sale under an execution issued irregularly and in violation of the agreement of the parties, or from a levy either oppressive and excessive, or otherwise in disregard of the legal rights of the execution debtor, a strong case would be presented for setting the sale aside. The first question in the case is, Was the execution issued in violation of the agreement? We have seen that the charge of the court submitted to the jury the question whether Atcheson had paid the $1,000, or had substantially complied with his agreement. Appellant claims that there is fundamental error in this charge, in that the court should have construed the legal effect of the various instruments, and told the jury that they showed a payment of the $1,000. We think that the draft, the instrument signed by Hutchison,

and that signed by Atcheson, all bearing the same date, are
evidently parts of one and the same transaction, and that
they show that the $1,000 procured through the accepted
draft of Wolston, Wells & Vidor was procured in part by the
sale of an interest in the judgment to that firm, and was ex-
pressly agreed not to be a payment by Atcheson.  The effect
of these instruments, and the benefit which Atcheson re-
ceived therefrom, was the prolongation of the time for pay-
ment of the $1,000 for three months.  His express agree-
ment with Wolston, Wells & Vidor was, that if he failed to
pay the $1,000 in three months, execution might issue.  The
evidence justified the verdict of the jury, which must have
been based on their belief that the $1,000 had not in either
case been paid according to agreement.  The appellant's
claim, that the execution issued in violation of the agree-
ment, is not maintained by the record.  The second proposi-
tion in appellant's brief is, that the court erred in its charge
to the jury as to the purchase-money being paid (tendered) to
appellees.  It is enough to say, that we have failed to find
anything in the charge requiring such a tender.  The charge,
with some immaterial parts omitted, has been already set
out, and it is only deemed necessary to refer to it.

The third proposition made by appellant is, that the court
erred in its charge as to the right of the defendant in execu-
tion to point out property.  The charge of the court submit-
ted to the jury whether the sheriff had made reasonable
inquiry and search for defendant before he made the levy.
The evidence justified the jury in their verdict that he had.
The evidence shows that reasonable opportunity was afforded
plaintiff to point out property, and this, we think, is all he
was entitled to under the statute and the decisions.  (Cook
v. De La Garza, 13 Tex., 431; Kendrick v. Rice, 16 Tex., 259;
Paschal's Dig., art. 3775.)  When Atcheson met the sheriff,
it does not appear that he claimed his privilege of pointing
out property; nor does it appear that he had personal prop-
erty or other lands which should have been first levied on.

The ground assumed in the petition, that the levy was excessive and oppressive, has not been presented in appellant's brief. Indeed, on the trial no evidence was adduced of the actual value of any of the tracts of land except the seven hundred and thirty-two acres. If this ground were relied on, surely evidence would have been introduced as to the value of these other tracts. Under the evidence introduced, the levy may not have been excessive. It is the duty of the officer in levying to make a proper allowance for depreciation in price as the usual effect of a forced sale. (De Witt *v.* Oppenheimer, *ante.*) Making this allowance, in the light of the evidence as to the usual extent of such depreciation at that time and place, it does not appear that the levy was excessive. Such being the facts exhibited in the record, we do not feel justified, under the assignment of errors and the brief of appellant, in examining critically the charge of the court on the subject of excessive levy, to see whether it embodied any error.

It is evident that the seven hundred and thirty-two acres of land was sold for less than one-tenth of its value. But it is plain also that the action of the plaintiff at the sale tended to produce that result. If, as he claimed, the execution was irregularly issued and the levy was illegally made, then he might claim that he was justified in his course in forbidding the sale, and that for those irregularities and for the inadequacy of the price the sale should have been set aside. But the verdict of the jury settles these points against him, and the evidence is, we think, sufficient to authorize the verdict. The inadequacy of price, if brought about by his own imprudent objections at the sale, would certainly be, of itself, an insufficient ground for setting the sale aside.

In regard to the evidence excluded, there was no error. The value of an adjacent tract of land was immaterial, there being direct evidence of the value of the land sold, to which it was adjacent. If it had appeared that the plaintiff had demanded and been refused a sale in tracts of forty acres, it

might then have been material to show what it would have sold for in such tracts. The record fails to show any such demand. The relevancy of the evidence as to plaintiff's tenants having at some time and by some person been driven off by attachments, does not appear.

However much it is to be regretted that the property of the debtor should be sold under execution for a price so inadequate, we are well satisfied that, under the rules of law applicable to the case as presented to us, the judgment should be affirmed.

AFFIRMED.