### RACHEL HANDY v. CONRAD CLIPPERT.

*Levy of execution—Oppressive acts of sheriff's deputy.*

A sheriff's officer must so execute writs intrusted to him as to do as little needless mischief to respondent debtors as possible; and where it is important to the debtor's business to have the benefit of his exemptions, the officer is bound to act promptly in setting them off to him.

In levying execution an officer has no right to seize and hold the whole of a debtor's property to satisfy a debt, which, even if all exemptions were allowed, would be more than secured by the remainder; and if he thereby preclude the debtor from engaging in his customary business, and even from keeping house, his action is oppressive and unjustifiable.

*It seems* that on execution defendant should lose no rights by failing to

demand the return of goods taken by an officer, if the officer makes
. such a demand impracticable by absenting himself.

Error to Wayne. (Speed, J.) April 11.—April 18.

CASE. Plaintiff brings error. Reversed.

*C. R. Ford* and *J. W. Donovan* for appellant. A sheriff
levying execution is bound to set aside exempt goods:
*Wyckoff v. Wyllis* 8 Mich. 48; and is liable as a trespasser if
he does not give an opportunity to make the selection:
*Michels v. Stork* 44 Mich. 4.

*Geo. W. Coomer* and *James Atkinson* for appellee.

COOLEY, J. The plaintiff, in an action on the case, seeks
to recover of the defendant, who at the time of the alleged
grievances was sheriff of Wayne county, the damages suf-
fered by her through the seizure by one Haubrick, a deputy
of the defendant, of the plaintiff's household goods.

The evidence of the plaintiff tended to show that in
January, 1882, she was engaged in business in Wyandotte,
Wayne county, as keeper of a boarding-house; that there
was at that time what the witnesses speak of as a business
" panic " at Wyandotte, which made the keeping of a board-·
ing-house at that place for the time unprofitable, and she
decided to remove her business across the river into Canada
temporarily; that for this purpose she packed up her house-
hold goods and property used by her in her business, but
that before she left with it, Haubrick, by virtue of a justice's
attachment for the sum of sixty-eight dollars, seized upon
all the goods, and took them from her possession; that the
value of the goods was eight hundred dollars; that when
she found her temporary arrangement was to be thus broken
up, plaintiff procured a house in Wyandotte, into which she
proposed to remove with a view to remaining there; that
the levy by Haubrick was made January 31, 1882, and he
kept the goods from the plaintiff, allowing her no exemp-
tions, until February 7, 1882, when the attachment suit was
called in justice's court, and the plaintiff failed to sustain

his action; that the goods not then being returned to the plaintiff, she instituted this suit.    In her declaration she counts on the wrongful denial of her exemptions, but she also claims to recover the whole value of the property by reason of the failure of the officer to return it.

The defense of the officer is that immediately on the termination of the attachment suit the property was taken from his possession by virtue of other writs against the plaintiff, and that if it was finally lost to the plaintiff, it was not through any fault of his.    The circuit judge was of opinion that the plaintiff was entitled to recover only nominal damages, unless she could show that she made a demand upon the officer for the return of the goods after the attachment suit had terminated.    The officer denied that any such demand was made, but he also shows that it was impracticable; for though he was present in the justice's court while the attachment suit was being tried, he went out of town before it was disposed of.

The circuit judge overlooked the fact that the plaintiff, if the facts are as she alleges, had suffered serious wrongs at the hands of the officer before the attachment suit was called for trial.    The levy itself was grossly excessive; and if the plaintiff had been allowed all the exemptions she claimed, there would apparently have been ample property left to secure the pretended debt.    It cannot be tolerated that such a seizure shall go unrebuked.    The officer is or should be a minister of justice; not of oppression; and he should execute every writ put into his hands in such a manner as to do as little mischief to the debtor as possible.    To seize and hold the whole of a debtor's property so as to preclude the debtor, not only from engaging in his customary business, but even from keeping house, when the enforcement of his process does not at all require it, is a proceeding which we cannot think the defendant himself would have failed to censure if it had come to his personal knowledge. And even if the seizure had been justifiable, the circumstances were such as to demand from the officer prompt action in setting off the exemptions; for every day's delay

was an unnecessary injury. And there is much in this record to raise at least a strong suspicion that the wrong which the officer continued for a week he assisted in perpetuating afterwards. But the questions on this branch of the case are questions of fact.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.