## W. T. FATHEREE v. J. M. WILLIAMS ET AL.

### Delivered April 8, 1896.

1.  **Pleading—Action Against Sheriff for Wrongful Levy—Sufficient Petition.**

Plaintiff sued defendant as the sheriff of Z. County.  His petition alleged that defendant had levied upon certain cattle of value largely exceeding the amount of the executions in his hands; that at the time plaintiff possessed other property subject to levy, and sufficient to satisfy both executions; that defendant never asked him to point out the property upon which to levy, but plaintiff requested that the second levy be made upon such other property, which would have been pointed out had not defendant refused to levy upon it.  Held, that the petition stated a cause of action, under the statute.

2.  **Wrongful Levy—Measure of Damages.**

Expenses incurred by plaintiff in endeavoring, after the levy, to find buyers for cattle levied upon, are too remote to form elements of damage; and damages cannot be recovered for cattle sold by plaintiff in excess of what was sufficient to satisfy the executions, unless he could not have sold a sufficient number without selling all.

APPEAL from Zavalla.  Tried below before Hon. M. F. LOWE.

*A. A. Dial* and *W. N. Parks*, for appellant.

*Ellis & Martin*, for appellees.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellant against the appellee, J. M. Williams, sheriff of Zavalla County, and the other appellees as sureties on his official bond.  A general demurrer and special exceptions were sustained to the petition, and, appellant declining to amend, the judgment was rendered against him from which he appeals.

The petition, after averring the election and qualification of Mr. Williams as sheriff, and the execution of his official bond by himself as principal and his co-appellees as sureties, alleges, substantially:  That on the 10th day of May, 1895, plaintiff and his wife were the joint owners and in possession of 140 head, more or less, of beef cattle, of

the market value of $25 per head, and of the aggregate value of $3500, which facts were then well known to appellees. That on the 16th day of April, 1895, an execution was issued out of the County Court of Zavalla County upon a judgment therein recovered by A. Harris against plaintiff, for $401.94, besides $5.05 costs, and directed to and placed in the hands of J. M. Williams, the sheriff of said county, commanding him to make the amount specified out of plaintiff's property. That said Williams, acting in his official capacity, by virtue of said writ, wrongfully, unjustly and oppressively levied upon 60 head of plaintiff's beeves, of the aggregate value of $1500, and on the 10th day of May, 1895, the date of the levy, advertised them for sale on the 21st day of that month. That on the 12th day of May, 1895, another execution was issued from said court upon a judgment rendered therein on the 10th day of the same month and year, in a cause wherein W. Y. Davidson was plaintiff and W. T. Fatheree and his wife, Katie, were defendants, for $411.62, and $7.55 costs of suit, which was likewise directed to and placed in the hands of the sheriff of Zavalla County; and that, by virtue thereof, said sheriff wrongfully and oppressively, and without regard to the rights of plaintiff, did seize and take into his possession the residue of his beef cattle, numbering 80 head or more, of the aggregate value of $2000, and on the same day advertised them for sale on the 23d of May, 1895. That when each of said executions were levied plaintiff owned 250 head of stock cattle and eight head of horses subject to levy and sale, of ample and sufficient value to satisfy both executions, but that defendant Williams never at any time requested or demanded him to point out property upon which to levy said writs, and that he was requested by plaintiff to levy the second execution upon the stock cattle, which were then in a pasture near the town of Batesville, the county seat of Zavalla County, and would have been pointed out and delivered to the sheriff, had he not refused to levy upon them by virtue of said writ. That by reason of the oppressive acts of defendant Williams in making such excessive levies and taking into his possession all of plaintiff's beef steers, and his failure to call upon or permit him to point out other property belonging to him upon which to levy said execution, and his failure to levy upon other property when requested, plaintiff was damaged in the sum of $1270. That after the levy of the first execution, with the intention and for the purpose of paying off said judgments with the proceeds, he effected a sale of 50 head of the beef cattle not covered by that writ, at an advantageous price and in excess of the sums called for in both executions, and, before the levy of the second execution, had gathered the number sold as well as the others not levied on for the purpose of shipping and delivering them to the purchaser in San Antonio, in order to carry out the sale so effected, and was in the act of making the shipment, when defendant Williams came to him while holding the cattle, and, being informed by plaintiff of the effected sale, and that his purpose in making it was to obtain the money by which he could satisfy said executions held by the sheriff against him,

wrongfully and excessively levied the second execution upon all his beef cattle not before seized by him under the first writ, and thereby prevented him from consummating such sale. That before such levy was made he requested said sheriff to levy upon the 250 head of stock cattle and eight head of horses before mentioned, and, after the seizures, tendered him his check on the parties in San Antonio to whom he had effected the sale for the aggregate amount, principal, interest and costs, due on said executions. That plaintiff after the seizure of his cattle, in order to prevent them from being sacrificed at forced sale in Zavalla County when there was no market for them, at the expense and loss of time amounting to $150, procured a buyer who agreed to pay him $17 per head for said cattle, and upon the sale of the cattle he gave the sheriff (Williams) his draft on the purchaser for the full amount due on said executions and costs, which he accepted in satisfaction of the writs and released the cattle from the levy thereunder. That such sale, though for a sum in excess of what the property would have brought under execution, was virtually a forced sale caused by its detention under execution, without which the cattle would not have been sold for less than $25 per head. That on account of the wrongful and oppressive acts of said sheriff, plaintiff has sustained an actual loss of $8 per head upon said 140 head of beef cattle, and the further sum of $150 in loss of time and money expended in his endeavors to find a purchaser for the cattle; which was rendered necessary by reason of the wrongful and oppressive acts of the sheriff as before stated; and that the acts, injuries, trespasses and oppressive acts alleged constitute a breach of the conditions of the sheriff's said official bond, upon which judgment is prayed for the damages occasioned by such wrongs, trespasses, injuries, etc.

After the general demurrer, the special exceptions interposed were, (1) the petition does not show that the alleged damages were the necessary and proximate result of the alleged excessive levy; (2) it is defective, in that it does not show that plaintiff placed the sheriff in possession of the property which he pointed out to be levied upon, nor that he informed the sheriff where the property was located, nor does it show such property was free from liens or incumbrances; (3) it is defective in its attempts to allege a tender of payment in satisfaction of the executions, in that it states a tender of a check and not of money; (4) the expense of procuring a purchaser is not an element of damages, malice not having been alleged; and (5) because the difference in the alleged value of the cattle and the price realized therefor at the sale made by plaintiff is not the true measure of damages, and the plaintiff cannot recover therefor because such sale was by him voluntarily made.

*Opinion.*—It is said by Mr. Justice Cooley in Handy v. Clippert, 50 Mich., 355, 15 N. W. Rep., 507, and quoted with approval in Freeman on Executions, 253: "The officer is or should be a minister of justice, not of oppression; and he should execute every writ put into his hands in such manner as to do as little mischief to the debtor as possible." He

should act in obedience to the command of a writ and, without delay, levy upon sufficient property of the defendant to satisfy the execution. He should not, however, in doing this ignore the provision of the statute which directs that he shall first call upon the defendant, if he can be found, or, if absent, upon his agent within the county, if known, to point out property to be levied upon, and make the levy first upon the property designated by the defendant or his agent, if the defendant or his agent complies with such statute. Revised Statutes, art. 2344.

In cases wherein it was sought to set aside sales under execution, an account of the failure of the officer to comply with the requirements of this article, it has been held that its provisions are directory only, and that, in the absence of a fraudulent combination between the officer and judgment creditor, it would not necessarily render a sale void. Odle v. Frost, 59 Texas, 684; Pearson v. Flanagan, 52 Texas, 280. While this construction of the statute, in its application to the kind of cases in which it was given, is obviously correct, it has never been intimated that the article is merely a dead letter to be ignored by the officer at will. On the contrary, it has been decided that, when the defendant promptly avails himself of his privilege under this statute, and actually points out property to be levied upon, subject to execution and sufficient in value to make the debt, his right so asserted cannot be ignored by the parties levying the writ, except at their peril. Beck v. Avondino, 82 Texas, 314, 18 S. W. Rep., 690. In Atchison v. Hutchinson, 51 Texas, 223, the duty of the sheriff to give the defendant an opportunity to point out property is recognized, by the court's holding him discharged from it in making reasonable search for the defendant before making the levy.

In determining what is a sufficient levy for the purpose of satisfying the writ, the officer is left to exercise his own judgment, free from the constraint of either the plaintiff or defendant; and is accountable to the plaintiff, on the one hand, if he fails to levy on as much as a reasonably prudent man would deem sufficient for that purpose,—making a proper allowance for the sacrifice usually incident to forced sales; and on the other hand, he is answerable to the defendant for an unreasonable and unnecessary levy on his property. He is not bound to take exactly enough and no more; this would be unreasonable, if not impossible. It is only where the estimate is so far from that which a prudent, discreet man would make as to render him accountable from a presumption of negligence or design to wrong or injure the party aggrieved. In the performance of his duty, he must keep in view the purpose of the writ, the security and satisfaction of the plaintiff's debt, and avoid all acts of oppression towards the defendant. It is indispensable that a certain amount of discretion be intrusted to him, because of the impossibility of fixing rules to govern the officer in all cases. The propriety of his action must therefore be determined by the facts and circumstances of each particular case. Cornelius v. Buford, 28 Texas, 209; Dewitt v. Oppenheimer, 51 Texas, 107; Atchison v. Hutchison, id., 203; Hilliard v.

Wilson, 65 Texas, 289; Lawson v. State, 10 Ark., 28; Freeman on Executions, sec. 253; Mechem on Public Officers, sec. 755; Murfree on Sheriffs, secs. 526, 527.

When these well established principles of law are applied to the facts alleged in plaintiff's petition, though it may not be taken as a model, we are of the opinion that it states a cause of action, and that it should have been left for a jury to determine, under the law, from all the facts and circumstances attending and relating to the levies, whether they were wrongful, oppressive and excessive, and, if so, what damages, if any, were thereby occasioned.

The question as to what would be the measure of damages might, under the peculiar facts, should the allegations in plaintiff's petition be established, be one of exceeding difficulty. And it would perhaps be improper for us to anticipate what may be proven on the trial, and upon such conjecture, unaided by briefs of counsel, endeavor to formulate and announce a rule by which the damages should be measured. We will say, however, that time lost and expenses incurred by plaintiff in endeavoring, after the levy, to find buyers for the cattle, are too remote to form elements of damages; and that, unless plaintiff could not have sold a sufficient number of cattle to satisfy the executions, without selling all levied upon, he cannot recover damages for the number he sold in excess of what was sufficient to satisfy the executions; for without it was necessary to sell all the cattle, the sale in excess of a sufficiency to satisfy the writs was purely voluntary on plaintiff's part, for the consequences of which defendants would be in no way responsible.

Reversed and remanded.

*Reversed and remanded.*