## MIXON v. STANLEY.

1. As a mortgage does not in this State pass title to the mort-gagee, the latter is not an "owner" of the mortgaged property, and therefore is not entitled under section 909 of the Civil Code to redeem land upon which he held a mortgage where the same was sold under a tax execution against the mortgagor.

2. An equitable petition which, among other things, alleged that a tax execution for an amount less than $40.00 had been levied upon a tract of land of the value of $3,000.00, that the land had been sold thereunder, and that the same was easily capable of subdivision, so that a parcel thereof could have been cut off and sold for an amount which would have satisfied the tax execution, as against a general demurrer, sufficiently alleged facts showing an excessive levy and a void sale.

3. Irrespective of the question ruled upon in the first note, the plaintiff's petition set forth an equitable cause of action, and the trial judge was right in overruling a general demurrer to the same.

Argued January 23,—Decided March 4, 1897.

Equitable petition. Before Judge Callaway. Richmond superior court. April term, 1896.

Mrs. Stanley brought her petition against Mrs. Loud and R. M. Mixon. A general demurrer was overruled, and Mixon excepted. The petition shows, that on May 6, 1891, Mrs. Loud executed her promissory note, whereby she promised to pay petitioner on May 6, 1896, $2,200 with interest from date, payable annually, at eight per cent. per annum, and for each of the instalments of interest from May 6, 1891, to May 6, 1896, Mrs. Loud gave her promissory note payable November 1 of each year, except that the interest note due in 1896 was payable May 6, 1896, and was only for interest from November 1, 1895, to May 6, 1896, the interest notes providing that they should bear interest if not paid at maturity, and the principal note providing that if the interest should not be paid within thirty days after due, the principal, at the option of the holder of the principal note, should become due and collectible at once. To secure the payment of this debt Mrs. Loud, on May 6, 1896, exe—

cuted to petitioner a mortgage conveying a certain tract of land described, which mortgage was recorded May 18, 1891. On November 1, 1893, and on November 1, 1894, Mrs. Loud failed to pay the interest notes due on those dates, and failed to pay the same for more than thirty days after each became due, and petitioner exercised her option and declared the whole amount of the debt due and collectible at once. During the April term, 1895, of Richmond superior court, petitioner filed her petition to foreclose the mortgage and obtained rule nisi thereon, which has been duly served, but up to the present time (August, 1895) no part of the sum sought to be collected has been paid, nor has any cause been shown against the foreclosure, and petitioner is informed and believes that neither will said sum be paid nor any cause be shown, and that rule absolute may be obtained by petitioner at the next term of the court, and petitioner will have to look to said realty for the collection of her debt and will probably have to be the purchaser thereof at foreclosure sale. Mrs. Loud made default in the payment of her State and county taxes for 1893, and a tax fi. fa. therefor was levied on said property, and on September 4, 1894, the same was sold at public outcry for said taxes, at which sale the property was purchased by R. M. Mixon for $125. One of the conditions of the mortgage was that Mrs. Loud would pay all taxes upon the property, and in the event of her failure to do so, petitioner was authorized to do so for her. Petitioner did not know of the failure to pay the taxes until after the property had been bid in by Mixon. In August, 1895, within a year from the date when the property was bid in by Mixon, petitioner tendered to Mixon the amount of his bid, with all interest and premium allowed thereon by law, in order to redeem the property from said tax sale, but Mixon refused to accept said tender. He is a son-in-law of Mrs. Loud, and this refusal was done collusively with her and for the purpose of destroying petitioner's rights under the mortgage. Petitioner here and now ten-

ders to Mixon the amount paid by him at the tax sale, with all premiums and interest thereon, as allowed by law. The property levied on and sold for taxes consists of 371 acres of land about two and a half miles from Augusta. The amount of the taxes was only $39.67, while the value of the land is some $3,000. The land is easily capable of sub-division, and a parcel thereof could readily have been cut off the land, without detriment to the remainder, sufficient in value to have produced the taxes without a levy being made upon the whole, and the levy upon the whole of the land was illegal and excessive, and the sale and deed there-under were illegal and void. Petitioner waives discovery, and prays that Mixon be decreed to accept the amount of his bid, with the interest or premium allowed thereon by law, and that thereupon the tax sale deed to him be cancelled; that the levy of the tax fi. fa. be decreed to have been exces-sive, and the sale and deed thereunder be decreed to be ille-gal and void; that Mixon be enjoined from attempting to interfere with the property or disposing of it or encumber-ing it, etc.

*H. C. Roney* and *J. R. Lamar*, for plaintiff in error.
*C. Henry Cohen*, contra.

FISH, Justice.

The main question presented by this record is, whether or not a mortgagee of real estate has a right to redeem the same from a tax sale. Although this is a question that has been often ruled upon by the courts of highest resort in this country, this is the first time that it has been before this court. We think its proper determination, in any case, de-pends upon the wording of the statute which provides for the redemption of land sold for taxes, and the nature of a mortgage within the jurisdiction where a decision upon the question is invoked. For we do not agree with those courts which seem to hold that the right to redeem exists inde-pendent of statute. In the present case, it depends upon

what is a mortgage in Georgia, and the construction to be given to the term "the owner," as used in the section of our code which makes provision for redemption. If the mortgagee can be considered "the owner" of the land that has been sold for taxes, within the meaning of the term as therein used, then he has the right to redeem it, otherwise not. The section provides, that "Whenever any land is sold by virtue of a tax execution issued under this code, the owner thereof, or any administrator, executor, or guardian or other trustee of the defendant in execution, shall have the privilege of redeeming said land thus sold," etc. Pol. Code, §909; Code of 1882, §898. "A mortgage in this State is only a security for debt, and passes no title." Civ. Code, §2723; Code of 1882, §1954. This declaration of the law appeared in our first code, which took effect the first of January, 1863, and has been in each subsequent code. It was, however, well settled law in this State before the adoption of the Code of 1860, as will be seen by reference to the following decisions of this court. *Davis* v. *Anderson*, 1 *Kelly*, 176; *Winter* v. *Garrard*, 7 *Ga.* 183; *Ragland* v. *Justices*, 10 *Ga.* 65; *Elfe* v. *Cole*, 26 *Ga.* 197. The general rule, deducible from the decisions of the courts, rendered in cases where tax redemption statutes have been under consideration, is, that such statutes should be liberally construed, and consequently the terms employed to designate the persons who have a right to redeem are given a broad and comprehensive meaning. In some jurisdictions, the courts have carried this liberality of construction to great lengths, further than we are willing to follow them. Thus it has been held that "almost any right, either in law or equity, perfect or inchoate, in possession or in action, or whether in the nature of a charge or incumbrance on the land, amounts to such an ownership as will entitle the party holding it to redeem the land from tax sale." Woodward *v.* Campbell, 39 Ark. 580; Rice *v.* Nelson, 27 Ia. 148. So it has been held that a mere judgment creditor of the "owner"

may redeem. Basso v. Benker, 33 La. Ann. 432. And in Blackwell on Tax Titles (5th ed.), §705, the author says: "In construing the redemption laws, the courts hold that the word "owner" is a generic term, which embraces the different species of interest which may be carved out of a fee-simple estate. This construction is the only one which can effectuate the intention of the legislature, and protect the interests of all parties concerned in the land sold for the non-payment of taxes. In the same estate there may exist a fee-simple and life-interest, or a leasehold. The estate may have been mortgaged to secure a debt, and judgment creditors may have liens upon it, and the land may be in the adverse possession of a stranger to the title, and whose possession may be ripened into a right. Each is an owner according to the extent of his interest or claim, and each has a right to protect his interest by a redemption from the tax sale." How the word "owner," as applied to land, can be legitimately given a meaning sufficiently elastic and far-reaching as to include one who is a mere lien-holder and nothing more, is hard for us to understand. We can understand *why* it has been given this construction, but we cannot understand *how*, with a due regard to the usual and well established import of the word, it can be so construed. So far as we have been able to discover, wherever the question of a mortgagee's right to redeem lands sold for taxes has been made it has been decided in the affirmative. But the logical deduction from the opinion of the Supreme Court of Pennsylvania in McBride v. Hoey (2 Watts, 439), where the right of general judgment creditors to redeem, under a statute giving the right to the owner, was the question involved, is that if the mortgage is a mere security for a debt and conveys no title, the mortgagee cannot redeem. In some of the States where these decisions have been rendered, the terms used in the statute to designate the persons who may redeem are more comprehensive than the word "owner" and are sufficiently broad to include a mere lien-holder within their legitimate meaning.

In others the common law rule that a mortgage vests the legal title in the mortgagee, and gives him the right of immediate possession, unless the contract stipulates to the contrary, still prevails; and it is easy to see how a mortgagee may be held, in those States, to be entitled to redeem under a statute giving that right to the owner. In still other States, while the common law rule has been modified, some sort of an estate is considered to be vested in the mortgagee. It is, however, undoubtedly true that in some jurisdictions where the common law idea of a mortgage has been completely abolished by statute and a mortgage is nothing but a lien to secure the payment of a debt, and where the right to redeem is simply conferred upon the "owner" of the land sold for taxes, the word "owner" has been given a meaning sufficiently elastic to include a mortgagee. Dubois v. Hepburn, decided by the Supreme Court of the United States, and reported in 10 Pet. 1, is an early and leading case upon the kind of construction which should be given to a statute authorizing the redemption of land sold for taxes, and it is one which has often been quoted from and followed by the highest courts in our different States. In that case that high court said, "A law authorizing the redemption of land so sold ought to receive a liberal and benign construction in favor of those whose estates will be otherwise divested;" and that "any right which, in law or equity, amounts to an ownership in the land; any right of entry upon it, to its possession or enjoyment, or any part of it, which can be deemed an estate in it, makes the person the owner, so far as it is necessary to give him the right to redeem." We think that this is as liberal a construction as can be given to the word "owner" when applied to real estate, even when it is used in a redemption statute, without doing great violence to its ordinarily well understood and accepted meaning. Let us take this most liberal construction of the word, then, and apply it to the case in hand. A mortgage in Georgia, as we have seen, is only a security for a

debt and conveys no title. "The foreclosure of a mortgage,. in this State, does not vest the fee in the mortgagee; it only authorizes a sale of the property, and directs the surplus, after discharging the debt, to be paid to the mortgagor or his. agent." *Winter* v. *Garrard,* 7 *Ga.* 183; Civil Code, §2751. The mortgagee has no "right which, in law or equity, amounts to an ownership in the land; he has no right of entry upon it, to its possession or enjoyment, or any part of it, which can be deemed an estate in it. He has neither possession, nor color of title. He has neither a present, nor a contingent, right of entry upon it. He has simply a lien upon it, to secure the payment of a debt. As a mere mortgagee, he can show no "connection with the title, past or present, by deed, descent, contract, or possession." So long as the condition of the contract remains unbroken, he can do nothing whatever with reference to the mortgaged premises; and when the condition *is* broken, all he can do is to enforce, not a title, not a right of possession, but a lien upon the land, and this lien can only be enforced by having the land sold at public outcry, where any other person desiring to purchase it has as much right to do so as the mortgagee. He is in no legitimate sense of the word "the owner" of the mortgaged property. He is no more "the owner," or an owner, than a judgment creditor, although the hardship of having his lien divested by a sale for taxes is greater than could befall a judgment creditor by such a sale of land belonging to his debtor, because the lien of the mortgagee exists only on the mortgaged property, and it was probably the creation of this lien which induced him to part with the money or property which it was given to secure. If he can be considered "the owner" of the particular land upon which he holds a mortgage, because of the lien which he has upon it, then the judgment creditor is "the owner" of all the property of his debtor, because he holds a lien upon all of it. And, as we have said, there are cases which go to this extreme. Taking the allegations in the petition

to be true (and for the purposes of the demurrer they are admitted), the case which we have under consideration forcibly illustrates the hardship to which a mortgagee, without fault on his part, may be subjected, by reason of the sale of the mortgaged premises for the non-payment of taxes, unless he has the right to redeem them from such a sale. From the allegations in the petition, it would be a great hardship upon Mrs. Stanley, the petitioner, who took a mortgage upon this land, to secure the payment of a note for $2,200, executed by the mortgagor at the same time of the mortgage, if her lien upon the land should be destroyed by the tax sale, and she should thus lose the amount of money represented by the principal of this note and the accumulated interest thereon. But if this were to be the inevitable result of our holding, as we do, that a mortgagee, in this State, has no right to redeem the mortgaged premises from a sale thereof for taxes, we should nevertheless feel constrained, by our views of the law, to make this ruling. For we are not here to *judicially amend* the law in order to mitigate or remove its severity in a given case, but we are here to *construe* it as it has been made by the lawmaking power. While we are not bound by the construction which the legislature may have put upon an existing law, when it sought to amend it, it is still worthy of notice that the General Assembly in 1879 thought it necessary to amend the redemption statute, which then simply provided that "the owner" might redeem, by adding thereto, as designating persons who may redeem, the words, "executor, administrator, guardian or other trustee of the defendant in execution." Perhaps this amendment was not absolutely necessary in order to accomplish the purposes which were apparently in view, but it shows that it was at least considered doubtful, in the then state of the statute, whether even a legal representative of the owner could redeem. Here was an opportunity for the legislature, whose attention was called to the limitations of the statute,

to have enlarged it so that a mortgagee, or lien-holder, would be embraced within its terms, but it did not see fit to do so.

2. Fortunately for the mortgagee, there is a point in the case upon which the decision of the court below, in overruling the demurrer to her petition, should be sustained. Her equitable petition alleged, among other things, that a tax execution, for $39.67, had been levied upon a tract of land, comprising 371 acres, worth $3,000, that the land had been sold thereunder, and that the same was easily capable of subdivision, so that a parcel thereof could readily have been cut off, without detriment to the remainder, sufficient in value to have produced said taxes, without a levy having been made upon the whole. She prayed that said levy should be decreed to be excessive, illegal and void, and that the sale thereunder be set aside. Taking these recitals to be true, she is here standing upon solid ground. This court held, in the case of *Brinson* v. *Lassiter*, 81 *Ga.* 40, that "The levy of a tax execution for $3.60 on one hundred acres of land, worth $1,200, is such a fraud on the law as to render the sale void, at the option of the land-owner, and a deed made in pursuance of such a levy and sale is void on its face, if it show the fact of such excessive levy." In *Morris* v. *Davis*, 75 *Ga* 169, it was held that "When a piece of property consisted of two separate portions, derived from different titles, one embracing a front of twenty-seven feet on a street in a city, and the other a front of twenty-five feet, and either would have brought more than the taxes, $400 having been given for one of them, it was excessive to levy on and sell the entire property together for some fifty dollars taxes." And in the opinion of the court, on page 174, it is said, the sale was void because of the excessive levy. See also *Parker* v. *Glenn*, 72 *Ga.* 644. The Supreme Court of Iowa decided that "Where land appraised at $800 was levied upon and sold, to satisfy a judgment for $21 and accrued costs of less than that sum," the levy was excessive, and that "the sale should be set aside on that

ground, without further proof." Cook *v.* Jenkins, 30 Ia. 452. In Tiernan *v.* Wilson, 6 Johns. 411, Chancellor Kent set aside, as fraudulent and void in law, a sale of the defendant's interests in two distinct lots, worth at the lowest calculation nearly $800, under an execution for $10.25. He said, "Such a sale carries an abuse on the very face of it and leads to the most oppressive speculation," and that "it was a perversion of the spirit and policy of the power with which the sheriff was invested." In Cornelius *v.* Burford, 28 Tex. 209, it is said that there cannot be any doubt "that a sale of property so disproportioned in value to the amount to be raised as to create the presumption of fraud or reckless indifference to the obligations of his trust on the part of the officer, would be void." So we say, that the levy of a tax execution calling for less than forty dollars upon 371 acres of land, which is worth $3,000, and is easily capable of subdivision, is so grossly excessive and oppressive as to be fraudulent in law, and a sale of the property to satisfy said fi. fa. is void. This is true even though there may be a mortgage upon the land for over two thirds of its value, because the sale of the land for taxes divests the lien of the mortgage. As against a general demurrer, therefore, the allegations of fact with reference to the levy upon and the sale of the property, in the present case, were sufficient to show an excessive levy and a void sale.

3. The principal and interest due the petitioner and secured by her mortgage amounted to nearly the alleged value of the land. She had a right to invoke the aid of equity in order to have the sale of the land under the levy of the tax execution set aside and the deed made in pursuance thereof declared to be void. She is vitally interested in having removed anything that will, naturally, injuriously affect the value of the land at public sale under a foreclosure of her mortgage, so that the land may bring its fair valuation. Irrespective, therefore, of the question ruled upon in the first head-note, the plaintiff's petition set forth an equi-

table cause of action, and the trial judge was right in over-ruling a general demurrer to the same.

*Judgment affirmed. All the Justices concurring.*